# UNITED STATES DISTRICT COURT
# DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREA GROVE, individually and on behalf of similarly situated individuals, | CLASS AND COLLECTIVE ACTION COMPLAINT |
| Plaintiff, | |
| v. | |
| MELTECH, INC., H&S CLUB OMAHA, INC., and SHANE HARRINGTON, | |
| Defendants. | |

    1.    Plaintiff Andrea Grove ("Plaintiff" or "Grove") brings this class and collective action behalf of herself and all other exotic dancers who have worked at H&S Club Omaha, Inc. ("Club Omaha") which is, upon information and belief, owned by Defendant Shane Harrington and managed by Defendant Meltech, Inc. Plaintiff brings this case under the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq*. ("FLSA") and the Nebraska Wage and Hour Act, Neb. Rev. Stat. §48-1201 *et seq.,* on behalf of herself and others similarly situated. Plaintiff alleges that Defendants have misclassified exotic dancers working at Club Omaha as independent contractors rather than employees, have failed to pay them minimum wage and overtime compensation for hours worked in excess of 40 a week, and have required dancers to pay fees and tip-outs, which constitute unlawful kick-backs under the FLSA.

## PARTIES

    2.    Plaintiff Andrea Grove ("Plaintiff") is a resident of Omaha, Nebraska. Plaintiff has worked as an exotic dancer at Club Omaha from approximately May 2016 until August 2019.

    3.    Defendant H&S Club Omaha, Inc ("Club Omaha") is an establishment where live nude dance entertainment is presented to adult members of the general public. Club Omaha is

1

located at 2607 S 120th Street, Omaha, Nebraska. Upon information and belief, Club Omaha is owned and managed by Defendant Meltech, Inc., located in Omaha, Nebraska.

4. Defendant Shane Harrington is the owner of Defendant Meltech, Inc. and is an owner-operator of Defendant Club Omaha. He directs the operations of Club Omaha's business, countersigns the independent contractor agreements signed by Plaintiff and other exotic dancers, and is directly involved in Club Omaha's payroll and employee classification decisions.

## JURISDICTION AND VENUE

5. The Court has subject matter jurisdiction under 29 U.S.C. § 201 et seq. (Fair Labor Standards Act) and 28 USC § 1331 (federal question).

6. This Court has supplemental jurisdiction over Plaintiff's state law claims pursuant 28 U.S.C. § 1367(a), because these claims are so related to the federal claims that they form part of the same case and controversy.

7. Venue is proper in the District of Nebraska because the Defendants are located in Omaha, Nebraska, in this judicial district, and because the events giving rise to the Complaint took place in Omaha, Nebraska, in this judicial district.

8. The Court has personal jurisdiction over Defendant Shane Harrington since Defendant Harrington resides in Omaha, Nebraska, in this judicial district, and since his work as owner of Meltech, Inc. and Club Omaha has taken place in Omaha, Nebraska, in this judicial district.

7. Defendants employ individuals engaged in commerce or in the production of goods for commerce and/or handling, selling, or otherwise working on goods or materials that have been moved in or produced in commerce by any person, as required by 29 U.S.C. §§ 206-207.

8. Defendants' annual gross volume of sales made or business done exceeds $500,000.

## CLASS DEFINITIONS

9. Plaintiff brings this action individually and as an opt-in, collective action pursuant to 29 U.S.C. § 216(b), on behalf of a class of all individuals who worked as exotic dancers at Club Omaha at any time within the three years prior to joining this lawsuit, who were misclassified as independent contractors and who were not paid minimum wage or overtime compensation as required by the Fair Labor Standards Act, and were subject to unlawful kick-backs under the FLSA.

10. Plaintiff also brings this action individually and as a class action on behalf of a class of individuals who worked as exotic dancers at Club Omaha at any time within the three years prior to the filing of this lawsuit, who were misclassified as independent contractors and who were not paid minimum wage or overtime compensation as required by the Nebraska Wage and Hour Act, Neb. Rev. Stat. §48-1201 *et seq.*

## FACTUAL ALLEGATIONS

10. Plaintiff and other exotic dancers who worked at Club Omaha performed dances on stage, private dances, and VIP room dances for Defendants' customers.

11. There were between 25-30 exotic dancers working at Club Omaha on any given night.

12. Plaintiff and other exotic dancers were required to schedule their shifts in advance, and were required to work a minimum of two shifts a week at Club Omaha Sunday through Thursday. If a dancer worked only one weekday, she was required to pay a $100 fee to Club Omaha. In practice, Plaintiff worked 4-5 shifts a week, with each shift lasting 10-12 hours.

13. Plaintiff and other exotic dancers were required to pay $20-$50 in house fees each night; they were required to pay an additional $10 for every half hour they were late for their scheduled shift.

14. Plaintiff and other exotic dancers were required to arrive at the club dressed and ready to perform

15. Plaintiff and other exotic dancers were required to participate in a Facebook group run by Club Omaha and to read all messages in the group each day.

16. Plaintiff and other exotic dancers did not receive any wages from Club Omaha. Instead, all their compensation came in the form of tips paid by customers for dances. Club Omaha set the prices customers were required to pay for dances, and determined the portion of the pay which Plaintiff and other dancers could keep. For example, a single song dance was $30, with the dancer receiving $20. A 30-minute bed dance was $200, with the dancer receiving $140.

17. If a dancer had less than 2 private dances during a shift, the dancer had to pay a $20 fee to Club Omaha.

18. Plaintiff and other exotic dancers were required to go up on stage at regular intervals during their shift. If a dancer did not go up on stage during a given shift, she had to pay a $100 fee to Club Omaha.

19. Dancers were required to work 8-hour shifts, and were required to pay a $50 penalty for leaving a shift early.

20. Club Omaha required Plaintiff and other dancers to adhere to rules regarding their appearance – for example, dancers were required to have a natural hair color. The dancers were also not allowed to accept drinks form customers, or to drink alcohol during their shift without a manager's permission.

21. Plaintiff and other exotic dancers were required to "tip out" each night, paying a minimum of $5 each to the DJ, security, and the manager.

22. Defendants required Plaintiff and other exotic dancers to park in a specified area, and to enter the club through a specific entrance depending on the time of day.

23. Plaintiff and other exotic dancers were subject to discipline, including termination, suspension, and fines if they failed to follow the rules and regulations set forth by Club Omaha, its owners, operators and managers. Plaintiff was terminated from club Omaha

after standing up for another dancer who refused to tip out Club Omaha's staff. This dancer was also terminated.

24. The work performed by Plaintiff and other exotic dancers – namely, adult, exotic entertainment – was central to Club Omaha's business as a nightclub providing adult live dancing entertainment.

## COLLECTIVE ACTION ALLEGATIONS UNDER THE FLSA

25. Plaintiff brings Counts I-II of this lawsuit pursuant to 29 U.S.C. § 216(b) as a collective action on behalf of the FLSA Collective defined above.

26. Plaintiff desires to pursue her FLSA claims on behalf of all individuals who opt-in to this action pursuant to 29 U.S.C. § 216(b).

27. Plaintiff and the FLSA Collective Members are "similarly situated" as that term is used in 29 U.S.C. § 216(b) because, *inter alia*, all such individuals have been subject to Defendants' common business and compensation practices as described herein, and, as a result of such practices, have not been paid the legally mandated minimum wage and overtime compensation for hours worked over forty (40) during the workweek, and were required to pay

unlawful kickbacks to Defendants. Resolution of this action requires inquiry into common facts, including, *inter alia*, Defendants' common misclassification, compensation and payroll practices.

28. The FLSA requires non-exempt hourly employees to be paid minimum wage for all hours worked and to be paid overtime compensation at a rate of 1.5 times the regular hourly rate for all hours worked over 40 in a week.

29. Defendants misclassified Plaintiff and FLSA Collective Members as independent contractors, failed to provide them minimum wage and overtime compensation as required by the FLSA, and required them to pay unlawful kickbacks in violation of the FLSA.

30. The similarly situated employees are known to Defendants, are readily identifiable, and can easily be located through Defendants' business records.

31. During the relevant time period, Defendants have employed dozens of FLSA Collective Members. These similarly situated employees may be readily notified of this action through U.S. Mail and/or other means, and allowed to opt in to this action pursuant to 29 U.S.C. § 216(b), for the purpose of collectively adjudicating their claims for minimum wage and overtime compensation, unlawful kickbacks, liquidated damages (or, alternatively, interest) and attorneys' fees and costs under the FLSA.

### NEBRASKA CLASS ACTION ALLEGATIONS

32. Plaintiff brings Count III of this action as a class action pursuant to Fed. R. Civ. P. 23 on behalf of herself and the Nebraska Class defined above.

33. The members of the Nebraska Class are so numerous that joinder of all members is impracticable. Upon information and belief, there are more than forty (40) members of the Nebraska Class.

34. Plaintiff will fairly and adequately represent and protect the interests of the

Nebraska Class because there is no conflict between the claims of Plaintiff and those of the Nebraska Class, and Plaintiff's claims are typical of the claims of the Nebraska Class. Plaintiff's Counsel are competent and experienced in litigating class actions and other complex litigation matters, including wage and hour cases like this one.

35. There are questions of law and fact common to the proposed Nebraska Class, which predominate over any questions affecting only individual Class Members, including, without limitation, whether Defendants have violated and continue to violate Nebraska law through their policy or practice of classifying exotic dancers as independent contractors and failing to pay them minimum wages.

36. Plaintiff's claims are typical of the claims of the Nebraska Class Members in the following ways, without limitation: (a) Plaintiff is a member of the Nebraska Class; (b) Plaintiff's claims arise out of the same policies, practices and course of conduct that form the basis of the claims of the Nebraska Class; (c) Plaintiff's claims are based on the same legal and remedial theories as those of the Nebraska Class and involve similar factual circumstances; (d) there are no conflicts between the interests of Plaintiff and the Nebraska Class Members; and (e) the injuries suffered by Plaintiff are similar to the injuries suffered by the Nebraska Class Members.

37. Class certification is appropriate under Fed. R. Civ. P. 23(b)(3) because questions of law and fact common to the Nebraska Class predominate over any questions affecting only individual Class Members.

38. Class action treatment is superior to the alternatives for the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously,

efficiently, and without the duplication of effort and expense that numerous individual actions would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Nebraska Class Members are readily identifiable from Defendants' own records. Prosecution of separate actions by individual members of the Nebraska Class would create the risk of inconsistent or varying adjudications with respect to individual Nebraska Class Members that would establish incompatible standards of conduct for Defendants.

39. A class action is superior to other available methods for adjudication of this controversy because joinder of all members is impractical. Further, the amounts at stake for many of the Nebraska Class Members, while substantial, are not great enough to enable them to maintain separate suits against Defendants.

40. Without a class action, Defendants will retain the benefit of their wrongdoing, which will result in further damages to Plaintiff and the Nebraska Class. Plaintiff envisions no difficulty in the management of this action as a class action.

## **CLAIM FOR RELIEF**

### **Count I: Minimum Wage and Overtime under the FLSA**

41. Plaintiff incorporates by reference the previous paragraphs of the Complaint.

42. Pursuant to 29 USC § 206, an employer must pay employees at least the minimum wage for all hours worked, and 29 USC § 207 provides that overtime wages must be paid by the employer when the employee works more than 40 hours per week.

43. The Defendants failed to pay Plaintiff and collective action members the minimum wage as required by 29 U.S.C. § 206.

44. The Defendants also failed to pay Plaintiff and collective action members

overtime wages for work in excess of forty hours in a week, in violation of 29 U.S.C. § 207.

45. Defendants' misclassification of dancers as independent contractors when they were really employees was knowing, willful, and intentional.

### Count II: Unlawful Kickbacks under the FLSA

46. Plaintiff incorporates by reference the previous paragraphs of the Complaint.

The house fees and mandatory tip-outs that Defendants required from Plaintiff and the members of the collective constitute unlawful "kick-backs" to an employer under the FLSA, 29 U.S.C. § 203(m).

47. 29 U.S.C. § 203(m)(2) provides that "[a]n employer may not keep tips received by its employees for any purposes, including allowing managers or supervisors to keep any portion of employees' tips, regardless of whether or not the employer takes a tip credit."

48. The unlawful kickbacks received or required by Defendants were obtained knowingly, willfully, intentionally, or in bad faith.

49. Plaintiff and the members of the collective are entitled to an award of back pay for all unlawful kickbacks required by Defendants.

### Count III: Violation of the Nebraska Wage and Hour Act

50. Plaintiff incorporates by reference the previous paragraphs of the Complaint.

51. The Nebraska Wage and Hour Act, Neb. Rev. Stat. §48-1201 *et seq.,* requires employers to pay minimum wage compensation for employees for all hours worked.

52. During all relevant times, Plaintiff and other exotic dancers were employees of Club Omaha within the meaning of Neb. Rev. Stat. §48-1202.

53. During all relevant times, Defendants were employers within the meaning of Neb. Rev. Stat. §48-1202.

54. Plaintiff and other exotic dancers are entitled to recover their unpaid minimum wage compensation as well as attorneys' fees and costs pursuant to Neb. Rev. Stat. §48-1203 and Neb. Rev. Stat. §48-1206.

**WHEREFORE**, Plaintiff requests that the Court enter the following relief:

a. An order permitting this litigation to proceed as a collective action pursuant to 29 U.S.C. § 216(b);

b. Prompt notice, pursuant to 29 U.S.C. § 216(b), of this litigation to all potential members of the FLSA Collective;

c. An order permitting this litigation to proceed as a class action pursuant to Fed. R. Civ. P. 23 on behalf of the Nebraska Class;

d. An order appointing Plaintiff's attorneys as Class Counsel;

e. An award of monetary damages to Plaintiff and Class and Collective Action Members in the form of back pay for unpaid minimum wages and overtime compensation, reimbursement of all unlawful withholdings from Plaintiff's and the Class and Collective Action Members' wages, together with liquidated damages;

f. Attorneys' fees and costs; and

g. Such further relief as the Court deems just and proper.

Respectfully submitted,


By: */s/ Harold Lichten*
Harold L. Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com


*Attorneys for Plaintiff
and the Proposed Class and Collective*


Dated: May 26, 2020