UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREA GROVE, individually and on behalf of others similarly situated,<br><br>                              Plaintiff,<br>- versus -<br><br>MELTECH, INC., H & S CLUB OMAHA, INC., and SHANE HARRINGTON,<br><br>                            Defendants. | Case No.: 8:20-cv-193<br><br><br><br><br><br>**BRIEF IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT PURSUANT TO FRCP RULE 56** |

## INTRODUCTION

Plaintiff has no evidence in support of her claims for minimum wages, over-time, and tip reimbursement and as such, her case must be dismissed as a matter of law with prejudice. Grove has not even submitted an affidavit in support of her claims. Her declarations are signed by her lawyer without a notary public or even a handwritten signature of Grove. She has not identified a single date or time of an offense. Grove's opt-in statement filed with the court doesn't even have Grove's signature on it or any signature at all, making it null and void. Grove contradicts herself in a declaration wherein she admits there was no dance schedule while claiming there was one. Defendants' counsel has sent Plaintiff's counsel approximately 18 emails since May 30, 2020, attempting to resolve this matter in good faith, only to be insulted in response repeatedly. Since Plaintiff has no admissible evidence to prove her three causes of action other than ten disprovable lies, her case must be dismissed as a matter of law.

## SUMMARY JUDGMENT LEGAL STANDARD

1) "Under Rule 56(c) summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." Once the motion for summary judgment is made and supported, it places an affirmative

1

burden on the non-moving party to go beyond the pleadings and "by affidavit or otherwise" designate "specific facts showing that there is a genuine issue for trial." *Robinson v. Monaghan,* 864 F.2d at 624 (quoting Fed.R.Civ.P. 56(e)); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). *Commercial Union Ins. Co. v. Schmidt*, 967 F.2d 270, 271 (8th Cir. 1992)

## PLAINTIFF'S COMPLAINT IS BASED UPON FALSE STATEMENTS OF FACT GROVE IS NOT CREDIBLE AS A PLAINTIFF OR CLASS REPRESENTATIVE

2) Plaintiff's opt-in form states Grove worked at Club Omaha 10/18 to 2/20, when Grove's first day was 9/17/18 (see Exhibit "A") and her last day was 12/20/19 (see Exhibit "B").

3) Grove was "terminated" on 9/17/18 and then returned to Club Omaha on 10/1/18 (see Exhibit "C")

4) Plaintiff's complaint falsely states "There were between 25 – 30 exotic dancers working at Club Omaha on any given night." (Par. 11) (Grove Dec. Par. 19)

5) Plaintiff's complaint falsely states, "Plaintiff and other exotic dancers were required to schedule their shifts in advance" (Par. 12) (Grove Dec. Par. 4)

6) Plaintiff's complaint falsely states, "Plaintiff worked 4 – 5 shifts a week, with each shift lasting 10 – 12 hours." (Par. 12) (Grove Dec. Par. 6)

7) Plaintiff's complaint falsely states, "Plaintiff and the other exotic dancers were required to pay $20 - $50 in house fees each night." (Par. 13) (Grove Dec. Par. 7)

8) Plaintiff's complaint falsely states, "Plaintiff and other exotic dancers were required to arrive at the club dressed and ready to perform." (Par. 14) (Grove Dec. Par. 8)

9) Plaintiff's complaint falsely states, "Plaintiff and the other exotic dancers did not receive any wages from Club Omaha." (Par. 16) (Grove Dec. Par. 10)

10) Plaintiff's complaint falsely states, "If a dancer did not go up on stage during a given shift, she had to pay a $100 fee to Club Omaha." (Par. 18) (Grove Dec. Par. 13)

11) Plaintiff's complaint falsely states, "Plaintiff and other exotic dancers were required to 'tip out each night.'" (Par. 21) (Grove Dec. Par. 14)

12) Plaintiff's complaint falsely states, "Plaintiff was terminated from Club Omaha after standing up for another dancer who refused to tip out Club Omaha's staff." (Par. 23) (Grove Dec. Par. 21)

13) These ten false statements of fact are all disproven by the evidence.

### A. THERE WERE NEVER 25 – 30 DANCERS AT CLUB OMAHA

14) Of the 1,000 nights of operation at Club Omaha there was one night with 23 dancers, one night with 21 dancers, and all other nights 20 or less dancers.

15) Typically, there were 7 to 12 during the week and 14 to 18 on weekends (see Harrington Dec. Exhibit "D")

### B. SHIFTS WERE NEVER SCHEDULED IN ADVANCE AT CLUB OMAHA

16) Shifts at Club Omaha were never scheduled in advance and Plaintiff offers no proof of schedules during any of the 150 weeks of the club's operation (see affidavits/declarations of Harrington Exhibit "D", manager Evans Exhibit "E", attorney Spencer Exhibit "F", security Watson Exhibit "G", dancer Kroese Exhibit "H", dancer Vasquez Exhibit "I", dancer Gann Exhibit "J", dancer Seamans Exhibit "K" and gold member Smith Exhibit "L").

17) Even the declarations of the opt-ins do not claim they had a schedule at Club Omaha (see declarations of Schueth Exhibit "M", Winchell Exhibit "N", and Magnuson Exhibit "O").

## C. GROVE DID NOT WORK 4 -5 DAYS WEEKLY 10 – 12 HOURS PER SHIFT

18) Grove claims to have worked nearly double the days and hours she actually worked (Grove Dec. dated 5/26/20 Par. 6 "I usually worked 4-5 shifts per week, and worked 10-12 hours during each shift.")

19) Analysis of Club Omaha's daily log with Plaintiff's own handwriting proves that Grove only worked approximately 140 shifts in 15 months (450 days) or approximately 2.7 days per week at an average of 8 – 9 hours per shift, not 4 – 5 days per week at 10 – 12 hours per day. (see Harrington Exhibit "D").

20) Plaintiff Grove's complaint does not identify a single week where she worked more than 40 hours.

21) Plaintiff Grove's complaint does not identify a single 8-hour shift where she did not make at least minimum wage ($9.00 per hour = $72.00 per shift).

## D. HOUSE FEES WERE NOT ALWAYS REQUIRED

22) Attached as Exhibit "P" is a Club Omaha document dated 9/25/19, granting Grove free house.

23) Grove paid no house fees for dozens of nights that she danced at Club Omaha.

24) Opt-in Schueth also states in her declaration that she was required to pay house fees every night but attached as Exhibit "Q" is a Club Omaha document granting Schueth free house.

25) Schueth paid no house fees for dozens of nights that she danced at Club Omaha.

26) In addition, house fees were often waived or reduced on slow nights for Plaintiff and the opt-ins.

4

### E. DANCERS ARE NOT REQUIRED TO ARRIVE READY TO PERFORM

27) Club Omaha never required this and the opt-ins Schueth, Winchell, and Magnuson do not state this in their declarations.

28) Club Omaha's both locations had large dressing rooms and restrooms where the dancers would dress and get ready.

29) Dancers were only "required" to "be ready to perform" when they signed in. (see Harrington Dec. Exhibit "D')

### F. PLAINTIFF GROVE AND OPT-IN SCHUETH DID RECEIVE COMPENSATION FROM CLUB OMAHA

30) While Grove and Schueth claim in their declarations that they were not paid by Club Omaha, attached as Exhibit "R" and Exhibit "S" are checks from Club Omaha to Grove and Schueth further demonstrating their lack of credibility.

### G. THERE WAS NO $100 PENALTY FOR MISSING A STAGE SET

31) This was never a policy at Club Omaha and neither Grove, Schueth, and Winchill or any other dancer ever paid a $100 fee for missing a stage set. (see Harrington Dec. Exhibit "D".)

32) Neither Plaintiff nor the opt-ins have identified a single time than any dancer at Club Omaha was fined in any amount of money for missing a stage set.

### H. TIPPING WAS ALWAYS OPTIONAL AT CLUB OMAHA

33) Plaintiff states that she and all dancers were "required" to tip out each night (Grove Dec. Par. 14 "I was also required to 'tip out' each night…" but her 2019 contract (Exhibit "T") states tipping is optional and suggested and her 2018 contract (Exhibit "U") is silent on the matter of tips.

5

34) Affidavits from Club Omaha's owner, former manager, attorney, security, four dancers, and a gold member prove that tipping was optional (see Harrington Exhibit "D", manager Evans Exhibit "E", attorney Spencer Exhibit "F", security Watson Exhibit "G", dancer Kroese Exhibit "H", dancer Vasquez Exhibit "I", dancer Gann Exhibit "J", dancer Seamans Exhibit "K" and gold member Smith Exhibit "L").

35) Plaintiff Grove's complaint does not identify a single occasion where she was forced to tip, the amount she was forced to tip, or the person she was forced to tip.

36) The Club Omaha time sheets where the dancers sign-in and out each night indicate whether or not a dancer tipped, further proof that it was voluntary as there were numerous nights when dancers including Grove did not tip. (see Exhibits "V" and "B" the last two attendance forms of Plaintiff Grove).

37) On 12/7/19 and 12/20/19, the last two nights Grove danced, she did not tip (see tipping columns in Exhibits "V" and "B").

38) On 12/20/19, 16 of 19 dancers tipped and on 12/7/19, 12 of 15 dancers tipped, proving that it was never mandatory as all dancers did not tip.

## I. GROVE WAS NOT TERMINATED FOR REASONS SHE CLAIMS

39) Plaintiff Grove claims she was terminated for standing up for a dancer (Veronica) who didn't tip on 12/20/20.

40) Club Omaha records prove that Veronica did tip on 12/20/20 (see 12/20/20 roster Exhibit "B").

41) As the court can see from the Club Omaha Dancer Attendance Form from Friday, 12/20/19, there were 19 dancers that night who signed in between 6:11 – 10:16 pm.

42) Andrea Grove (Harmony) signed in at 8:00 pm (13th dancer that night) and she was one

6

of three dancers who did not tip that night (see tipping column).

43) However, Christina Winchell (Veronica), the dancer Grove was allegedly standing up for, did tip (see tipping column).

44) The declaration of Harrington (Exhibit "D') and witness Gann (dancer Cleo) (Exhibit "J") and records of Club Omaha prove that Plaintiff Grove was not terminated for standing up for another dancer who didn't tip on 12/20/20.

45) Grove was terminated for numerous violations of her two contracts with Club Omaha.

46) Plaintiff Grove's complaint is based upon these ten lies that Defendants have disproven in this motion and exhibits and as such, Grove's complaint must be dismissed as a matter of law.

## GROVE AND THE OPT-INS HAVE NOT SUBMITTED A SINGLE PIECE OF ADMISSIBLE EVIDENCE IN SUPPORT OF THEIR CLAIMS

47) Grove has submitted two declarations, but neither is notarized and neither even bears her handwritten signature. These documents were type-signed by her lawyer, likely someone she has not even met in person, with offices over 1,000 miles away. (Exhibit "W")

48) Grove has submitted an opt-in form to the court that is not signed by her or anyone and contains the wrong dates of work. This document is null and void. (Exhibit "X")

49) One of the declarations filed by Grove's attorney (Destinee Magnuson Exhibit "O") bears the type-signed name of the lawyer instead of the declarant, making that document null and void.

50) None of the opt-ins or any witness have submitted a single affidavit or other piece of evidence on behalf of Plaintiff.

51) Despite numerous requests, Plaintiff Grove and the opt-ins have not submitted any

contracts, attorney-client retainers, affidavits, dancer schedules, tax returns, bank statements, receipts, records, photos, videos, or any evidence in support of their class action.

## **DECLARATIONS OF OPT-INS SCHUETH AND WINCHELL ARE PERJURED**

52) The declaration filed by opt-in Cassandra Schueth contains some of the same lies as Grove's declaration: Par. 5 "For every shift I worked, I had to pay a house fee..." Par. 8 "I was not paid any wages by Club Omaha …" Par. 10 "At the end of the shift I was required to tip out…"

53) Attached is a Club Omaha document dated 10/2/19 (Exhibit "Q"), granting Schueth "free house" despite her false claim that for "every shift" she had to pay a house fee.

54) Attached as Exhibit "S" are payroll checks from Club Omaha to Schueth despite her claim that she was never paid wages.

55) Attached as Exhibit "Y" are Schueth's 6 dancer contracts, none of which require tipping and all of which prohibit litigation.

## **FLSA AND NWPCA DO NOT APPLY TO DANCERS AT CLUB OMAHA**

56) Mays was an exotic dancer at Shaker's in Lancaster County, only 40 miles west of Club Omaha in Nebraska.

57) The Nebraska Supreme Court concluded in her case, "(H)ere, even considering the most liberal standards, the evidence fails to show that Mays engaged in interstate commerce." *Mays v. Midnite Dreams, Inc.*, 300 Neb. 485, 504 (Neb. 2018)

58) "(W)e find plain error in the court's ruling that Mays was entitled to compensation, overtime compensation, no tip credit, liquidated damages, and attorney fees and costs under the FLSA." *Mays v. Midnite Dreams, Inc.*, 300 Neb. 485, 506 (Neb. 2018)

59) "Mays was not entitled to relief under § 48-1231 of the NWPCA." *Mays v. Midnite Dreams, Inc.*, 300 Neb. 485, 508 (Neb. 2018)

**GROVE WAS AN INDEPENDENT CONTRACTOR NOT AN EMPLOYEE**

60) Dancers at Club Omaha are and always have been independent contractors as a matter of law.

61) Defendant Harrington met with the Nebraska Department of Labor in Lincoln before opening Club Omaha to confirm that the terms of the club's contracts were ethical and legal and complied with Nebraska labor law.

62) Defendant Harrington was told that as long as dancers had no set schedule and could dance anywhere they liked that they were independent contractors. (see Harrington Exhibit "D")

63) Defendants acted in good faith and did not intentionally mischaracterize the employment status of its dancers including Grove and the 10 opt-ins.

64) The 2 contracts executed by Plaintiff Grove (Exhibits "T" and "U") and 35 dancer contracts executed by the 10 opt-ins make it clear that Performers are independent contractors, that they are responsible for paying their own taxes, and that they may work anywhere they like.

65) "**(T)the adult entertainment industry routinely characterizes performers as independent contractors rather than employees**. Evidence of this industry practice satisfies section 530(2)(C). Two other district courts have granted section 530 relief to similar adult entertainment businesses based at least in part upon industry practice. (emphasis added) *See JJR,* 950 F. Supp. at 1044-45; *Marlar, Inc. v. United States,* 934 F. Supp. 1204, 1209-10 (W.D.Wash. 1996). Moreover, Hafiz, the president of Deja Vu,

offered evidence showing that, in his experience, most adult nightclubs operate in a like manner. ( *See* Hafiz Dep. at 14-15; Hafiz Aff. ¶¶ 9-10, 14, 17-18.) Hafiz came to this conclusion after working in the industry for several years, and after traveling to various adult entertainment clubs before opening Deja Vu. ( *See id.*) Lee Klein, Deja Vu's attorney, and David Shindel, Deja Vu's accountant, have also found that, in the adult entertainment business, performers are routinely treated as non-employees. ( *See* Klein Aff. ¶¶ 6-8; Shindel Aff. ¶¶ 4, 9-11.) The government offered no proof to contradict the existence of the above industry practice, which operates to create a conclusive presumption that Deja Vu had a reasonable basis for treating performers as independent contractors. *See General Inv. Corp. v. United States,* 823 F.2d 337, 339-40 (9th Cir. 1987). Therefore, this Court finds that, based on industry practice, Deja Vu was reasonable in classifying the club's performers as independent contractors. *Deja Vu Entertainment Enterprises of Minnesota, Inc. v. United States*, 1 F. Supp. 2d 964, 968-69 (D. Minn. 1998)

66) "(S)everal exotic dancers, including Crystal Hilborn, Eden Wheeler, and Stacy Jones, were determined not to be employees under the FLSA in a similar action brought against another gentlemen's club." *See Hilborn v. Prime Time Club, Inc.* No. 4:11CV00197- BSM (E.D. Ark. July 12, 2012)." *Cruthis v. Vision's*, No. 4:12CV244 KGB, at *5-6 (E.D. Ark. Aug. 7, 2013)

67) In the case of Mays v. Midnite Dreams (the Shaker's case): "The "house rules" concerned the dancers' shift arrival times; hair, makeup, lotion, and dress requirements for the dancers; the number and order of sets the dancers performed during a shift; the method of payment the dancers could accept from customers; cleaning duties; the price the dancers

10

could charge for private and "VIP" room dances; off-stage dancer conduct; and conduct during onstage performances, specifying clothing items the dancers were expected to remove during certain sets. *Mays v. Midnite Dreams, Inc.*, 300 Neb. 485, 490 (Neb. 2018)

68) Unlike Club Omaha, Shaker's had, "shift arrival times," "hair, makeup, and lotion requirements," "cleaning duties," and "conduct during onstage performances."

69) Grove choreographed her own dances, selected her own costumes, styled her hair and make-up as she liked, ordered and ate food when she liked, and left early if she liked.

70) Grove was allowed to work at Club Omaha any night she wanted, arrive and leave any time she wanted, and work at any other club or gig she wanted.

71) "(D)ancers at Rick's NY were free to dance at other adult entertainment clubs, or be employed by other businesses. Def. 56.1 ¶ 111; Pl. Resp. 56.1 ¶ 111. They were not required to work exclusively at Rick's NY, and it is undisputed that many worked elsewhere. SF ¶¶ 133-139. **This factor favors defendants' argument that the dancers at the Club were not employees**. (emphasis added) *Hart v. Rick's Cabaret Int'l, Inc.*, 09 Civ. 3043 (PAE), at *25 (S.D.N.Y. Sep. 10, 2013)

72) When she requested to clean the club to earn extra money, she was paid by check (Exhibit "R") whereas the dancers at Shaker's in Waverly were forced to clean as part of their job without additional compensation.

73) The reason Mays was classified as an employee in the Shaker's case and other dancers around the country have been so classified, is because they have work schedules, they are prohibited from dancing at competitor clubs, and they are required to do manual labor including cleaning dressing rooms, bathrooms and dance floors.

11

74) In her complaint, declarations, and opt-in form, Grove falsely states she was never paid by Club Omaha.

75) Grove was an independent contractor at Club Omaha who made great money from September 2018 to December 2019.

76) The terms of her independent contractor agreement are much more favorable than those offered to employees at strip clubs, who have set schedules and can't dance at other clubs. (see affidavits of dancers Kroese, Gann, Vasquez and Seamans)

### GROVE IS ENGAGED IN FRIVOLOUS RETALIATION IN BAD FAITH

77) In February 2020, Plaintiff filed a groundless sex discrimination case with the Nebraska Equal Opportunity Commission (NEOC) against Defendants. (Exhibit "Z")

78) In this NEOC complaint, she does not complain that she was sexually harassed, but rather, someone else was (over a year prior). Therefore, she had no standing to file the complaint in the first place.

79) Plaintiff Grove falsely states in her NEOC complaint that, "I began my employment with Respondent on 10/1/18 and I currently employed as an Entertainer. Due to my sex, I was disciplined."

80) While Grove claimed in her February 2020 NEOC complaint that was disciplined by Club Omaha because of her sex/gender, in her May 2020 lawsuit, she claims she was disciplined for standing up for another dancer who didn't tip without mentioning anything about sex discrimination or harassment.

81) This NEOC complaint makes the current claim for wages suspect as Grove never complained about wages until six months after she stopped dancing at Club Omaha.

82) Defendants treat the female dancers at their club like royalty, even better than men.

83) Defendant Grove and the female dancers are given much more leeway, second, third and fourth chances, whereas male employees and contractors including DJs, security, dancers, have been terminated for first or second offenses. (see Harrington Dec. Exhibit "D")

## GROVE AND OPT-INS FOREFEITED THEIR RIGHT TO ARBITRATION

84) "In light of the strong federal policy in favor of arbitration, any doubts concerning waiver of arbitrability should be resolved in favor of arbitration. *Nesslage v. York Sec., Inc.,* 823 F.2d 231, 234 (8th Cir. 1987). Nevertheless, we will find waiver where the party claiming the right to arbitration: (1) knew of an existing right to arbitration; (2) acted inconsistently with that right; and (3) prejudiced the other party by these inconsistent acts. *Stifel, Nicolaus Co. v. Freeman,* 924 F.2d 157, 158 (8th Cir. 1991). *Ritzel Communications v. Mid-American Cellular*, 989 F.2d 966, 968-69 (8th Cir. 1993)

85) Plaintiff Grove knew of her right to arbitrate since 2018, nearly two years prior to filing this federal class action lawsuit.

86) All of the opt-ins knew of their right to arbitrate the day they started dancing at Club Omaha.

87) The Plaintiff and 10 opt-ins collectively have 50 contracts entered since 2017 that all have arbitration agreements.

88) Plaintiff Grove's lawyers were informed of this arbitration agreement and class action waiver in writing on 5/30/20.

89) Rather than voluntarily submitting to individual arbitration, after 5/30/20, Plaintiff and her attorneys solicited dancers at Club Omaha as Plaintiffs and witnesses who were currently on their roster.

90) Plaintiff filed motions for various relief, including conditional class certification and a

temporary restraining order.

91) Defendants have been prejudiced by these actions as they have lost dancers, lost income, and the case is now being widely reported in Omaha and regional media, causing further damages to Defendants.

92) Defendants have been forced to defend this frivolous case while pursuing arbitration because the media and Omaha public as well as Club Omaha's dancers and members are following the case and without filing prompt opposition to Plaintiff's lawsuit and motions, Defendants would appear liable.

## **CONCLUSION**

Grove has lied repeatedly about her hours, shifts, employment status, forced tipping, sexual harassment, sexual discrimination, receipt of checks from Club Omaha, and numerous other relevant facts. Grove violated her two contracts with Club Omaha by filing a lawsuit when the contract has an arbitration clause, filing a class action when the contract has a class action waiver, and going public with her grievances to the media and social media when the contract has a 30-day dispute resolution clause and confidentiality agreement. Defendants have submitted nearly a dozen affidavits in opposition to Grove's false claims, dozens of additional exhibits, and Plaintiff has not submitted a single admissible form of evidence to prove any of her three claims, only type-signed declarations by lawyers 1,000 miles away.

Wherefore, Defendants request that this case be dismissed with prejudice and that Defendants be granted attorneys' fees and the costs of this action.

June 29, 2020

Respectfully submitted,

<u>s/Evan Spencer</u>
Evan Spencer
Attorney at Law
NY Bar# 278681205
305 Broadway, 7th Floor
New York, NY   10007
Tel. 917.547.4665
Evan@EvanSpencerEsq.com
EvanSpencerEsq.com

*Attorney for Defendants*

### CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 29th day of June, 2020, a true and correct copy of the above and foregoing document was electronically filed with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all parties' counsel of record.

<u>s/Evan Spencer</u>
Evan Spencer