IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREA GROVE, individually and on behalf of similarly situated individuals; and CHRYSTINA WINCHELL, individually and on behalf of similarly situated individuals;<br><br>The plaintiffs,<br><br>vs.<br><br>MELTECH, Inc.; H&S CLUB OMAHA, INC., and SHANE HARRINGTON,<br><br>The defendants. | **8:20CV193**<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the plaintiff's renewed motion for a preliminary injunction, Filing No. 75. This is an action for violations of the Fair Labor Standards Act of 1938 ("FLSA"), 29 U.S.C. § 201, *et seq.*, and the Nebraska Wage and Hour Act ("NWHA"), Neb. Rev. Stat. § 48-1201 *et seq.* Jurisdiction is based on a federal question under 28 U.S.C. § 1331.

The plaintiffs, exotic dancers, allege, on behalf of themselves and others similarly situated, that the defendants Meltech, Inc., H&S Club Omaha, and Shane Harrington (collectively, "Club Omaha") violated the FLSA and the NWPA by misclassifying them as independent contractors rather than as employees, failing to pay them minimum and overtime wages, requiring them to pay unlawful kickbacks, and retaliating against them for filing this action.

The plaintiffs renew their earlier motion for a preliminary injunction, contending that the conduct that gave rise to their original motion has continued and both a preliminary injunction and corrective notice remain necessary in order to preserve and

1

protect the rights of the dancers at Club Omaha. Filing No. 75, renewed motion; Filing No. 18, original motion. They also argue that equitable tolling of the statute of limitations is necessary in this case since current and former Club Omaha dancers have been, and continue to be, under the impression that they are not permitted to join this putative class and collective action, and/or that they would be harshly penalized for doing so.

In support of their earlier and renewed motions, the plaintiffs present evidence of contacts between defendants and plaintiffs and potential opt-in members of a proposed collective FLSA class. *See* Filing No. 20-1, Ex. A, Declaration of Andrea Grove ("Grove Decl."); Filing No. 20-2, Ex. B, Declaration of Cassandra Schueth ("Schueth Decl."); Filing No. 20-3, Ex. C, Declaration of Diana Blanco ("Blanco Decl."); and Filing No. 20-4, Ex. D, Declaration of Olea Savytska ("Savytska Decl."); Filing No. 30-1, Ex. A, Declaration of Olena Savytska ("Savytska Decl. II"); Filing No. 77-1, Ex. D, Declaration of Olena Savytska ("Savytska Decl. III"). The plaintiffs' counsel provided defense counsel a list of the dancers who had opted into this case as authorized by section 216(b) of the FLSA in June 2020. *See* Filing No. 20-4, Ex. D, Savytska Decl. at 1. Shortly thereafter, several of the opt-ins were contacted by defendant Shane Harrington, the owner of Club Omaha, via Facebook message, and at least one dancer was confronted by Shane Harrington in person, in the presence of the defendants' counsel, and terminated. *See* Filing No. 20-1, Ex. A, Declaration of Andrea Grove ("Grove Decl."); Filing No. 20-2, Ex. B, Declaration of Cassandra Schueth ("Schueth Decl."); Filing No. 20-3, Ex. C, Declaration of Diana Blanco ("Blanco Decl."); and Filing No. 20-4, Ex. D, Declaration of Olena Savytska ("Savytska Decl."). Defendant Harrington reproached the dancers for this lawsuit and threatened to bring counterclaims any dancers who took part in it. *See id.* One of the dancers decided

to opt out of the case as a result of these tactics; others contacted plaintiff's counsel fearing further retaliation. Filing No. 20-4, Ex. D, Savytska Decl. at 1-2; Filing No. 17, Motion to Withdraw. Harrington later sent a message to current exotic dancers at Club Omaha, threatening termination for participating in the action. Filing No. 20-1, Ex. A, Grove Decl., Ex. 1.[1]

The plaintiffs have shown that on August 2, 2020, defendant Harrington posted a message Club Omaha group chat. Filing No. 20-4, Ex. D., Savytska Decl., Ex. 1, Screenshot. In that message, Harrington accuses the plaintiffs, the opt-ins and their counsel of harassing other dancers and states that Club Omaha is seeking $500,000.00 in damages from the plaintiffs and opt-ins. *Id.* In another message in the group chat, Harrington states in the message that "[he] will win and receive damages from these girls and we will throw the biggest party ever with the money[]." Filing No. 771, Savytska Decl. II, Ex. 2, Screenshot. Other evidence submitted by the plaintiffs show that Harrington unequivocally stated in a group chat message that any Club Omaha dancers who join this case would be fired. *See* Filing No. 20-1, Ex. A, Grove Decl., Ex. 1, Screenshot.[2] Harrington also threatens dancers who share screenshots from the Club Omaha Facebook chat with termination and legal claims, stating "[o]nce we find out it was you that sent this to them, we will end your contract immediately and sue you." Filing No. 30-1, Savytska Decl., Ex. 3, Screenshot; *see also* Filing No. 69-10, Screenshot (stating "I will

---

[1] The plaintiffs also allege that defendants' counsel Evan Spencer, encouraged and contributed to this behavior. See Filing No.76, Brief at 2-3. The record supports that contention. *See* Filing Nos. 20-4, Savytska Decl.; Filing No. 77-1, Savytska Decl. III.

[2] Specifically, Harrington states, "I have already had to remove 2 dancers in our chat because they were apart [sic] of [the lawsuit]. Anyone who currently has a contract . . . and is a part of this or decides to be I will end your contracts immediately . . . I will also countersue all parties involved for damages and legal fees." No. 20-1, Ex. A, Grove Decl., Ex. 1, Screenshot at 1.

3

be adding you to my lawsuit."). Also, plaintiffs' counsel states in her declaration that, in response to her request that the defendants cease improper contact, defense counsel threatened a counterclaim against them. Filing No. 20-4, Ex. D, Savytska Decl. at 2. At least one opt-in has withdrawn from the case. *Id.*; *see* Filing No. 17, Motion to Withdraw.

The record also shows that defendant Club Omaha alleges in an amended complaint filed with the American Arbitration Association ("AAA") on July 17, 2020, that "[r]espondents have engaged in a plot to destroy Claimants over the past six months, including unethical, tortious, and criminal conduct, including perjury, attempted extortion, and blackmail[]." See Filing No. 77-1, Ex. D, Savytska Decl. III, Ex. 3, AAA Amended Complaint; Filing No. 69-7, AAA Amended Complaint. In an email to the plaintiffs' counsel, titled "Settlement Offer," Club Omaha offers to settle with the plaintiffs for $50,000.00 in damages and legal fees. Filing No. 77-1, Ex. D, Savytska Decl. III, Ex. 4, correspondence from Mr. Spencer to plaintiffs' counsel. Evidence of record also shows that defendants Harrington and Club Omaha filed lawsuits against potential opt-ins Chrystina Winchell, Rylee Struble, and Alliya Lewis in Nebraska state court in January 2020. Filing No. 30-1, Ex. A, Savytska Decl., Ex. 1; Filing No. 72-5, Ex. E; Filing No. 72-6, Ex. F, Nebraska State Court Complaints.

In response to the plaintiffs' motion for injunctive relief, Club Omaha does not controvert the veracity of most of the plaintiffs' showing.[3] Specifically, they do not deny Harrington's multiple written messages to current Club Omaha dancers, which make clear that dancers who assert wage and hour claims against Club Omaha will be terminated and will be sued by the club. Rather, they rely on the argument that the putative class

---

[3] The defendants deny that they have made misstatements and state that the information provided to current and former Club Omaha dancers was true and accurate. Filing No. 79, Brief at 8.

members are bound by independent contractor agreements that contain an arbitration clause and they submit copies of those contracts. Filing No. 23, Brief; Filing No. 23-1, Ex. A, contracts: Filing No. 23-2, Affidavit of Shame Harrington ("Harrington Aff."); Ex. C, Affidavit of Evan Spencer ("Spencer Aff."). Also, they argue that the plaintiffs have submitted perjured affidavits. Filing No. 23, Brief at 1; Filing No. 23-3, Spencer Aff. at 2. Club Omaha contends that its conduct is legal and ethical and characterizes this FLSA action as frivolous. Filing No. 79, Defendants' Brief at 1, 3, 7. The defendants state that they have "a First Amendment right to warn their dancers that participation in this frivolous litigation is not in their best interests and that claims have been filed against these dancers." *Id.* at 7. They also contend they have a contractual right to communicate with the plaintiffs. Filing No. 80-1, Affidavit of Shane Harrington ("Harrington Aff. II") at 4.

In declarations submitted in opposition to the original and renewed motions, defendant Shane Harrington makes numerous irrelevant and unsubstantiated statements. *See* Filing No. 23-1, Harrington Aff.; Filing No.80-1, Affidavit of Shane Harrington ("Harrington Aff. II"). Defendants raise essentially the same arguments that the court addressed and rejected in denying the defendants earlier motion for sanctions. *See* Filing No. 73, Memorandum and Order at 5.

The plaintiffs request that this Court exercise its broad equitable powers and (1) enter a preliminary injunction prohibiting the defendants from taking additional adverse employment action against the plaintiffs, opt-ins, or any other exotic dancers who may participate in this litigation; (2) order corrective notice to all potential class and collective members; and (3) toll the statute of limitations for any potential opt-in the plaintiffs for 90 days, or until this Court is able to rule on the plaintiffs' motion for conditional certification,

5

in order to counteract the dramatic chilling effect of the defendants' ongoing intimidation and retaliation.

II. LAW

When deciding whether to issue a preliminary injunction, the Court weighs the four *Dataphase* factors: (1) the threat of irreparable harm to the movant; (2) the state of the balance between this harm and the injury that granting the injunction will inflict on other parties; (3) the probability that the movant will succeed on the merits; and (4) the public interest. *Johnson v. Minneapolis Park & Recreation Bd.*, 729 F.3d 1094, 1098 (8th Cir. 2013); (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 114 (8th Cir. 1981) (*en banc*)). A preliminary injunction is an extraordinary remedy, and the movant bears the burden of establishing that relief is proper. *Roudachevski v. All-Am. Care Centers, Inc.*, 648 F.3d 701, 705 (8th Cir. 2011).

A preliminary injunction cannot issue without a showing of irreparable harm. *Dataphase*, 640 F.2d at 114 n.9. It is the movant's burden to "demonstrate that irreparable injury is *likely* in the absence of an injunction." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). To show a threat of irreparable harm, the movant must show that the harm is certain and great and of such imminence that there is a clear and present need for equitable relief. *Roudachevski*, 648 F.3d at 706. Stated differently, the harm "must be actual and not theoretical." *Brady v. Nat'l Football League*, 640 F.3d 785, 794 (8th Cir. 2011). And harm is not irreparable when a party can be fully compensated for its injuries through an award of damages. *Gen. Motors Corp. v. Harry Brown's, LLC,* 563 F.3d 312, 319 (8th Cir. 2009).

"'Unchecked retaliation subverts the purpose of the FLSA' and 'the resulting weakened enforcement of federal law can *itself* be irreparable harm in the context of a preliminary injunction application'; however, a plaintiff 'must show some evidence of actual chill that would be cured by the requested injunction.'" *Mullins v. City of New York*, 626 F.3d 47, 55 (2d Cir. 2010) (quoting *Lin v. Great Rose Fashion, Inc.*, No. 08- cv-4778, 2009 WL 1544749, at *21 (E.D.N.Y. June 3, 2009) (internal quotation marks omitted)). " '[A] retaliatory discharge carries with it the distinct risk that other employees may be deterred from protecting their rights . . . or from providing testimony for the plaintiff in [his] effort to protect [his] own rights.'" *Id.* (quoting *Holt v. Continental Grp., Inc.*, 708 F.2d 87, 91 (2d Cir. 1983)). Those risks may be found to constitute irreparable injury. *Id.*

Also, although success on the merits is the most important of the four factors, it is insufficient on its own. *Roudachevski*, 648 F.3d at 706; *see also Laclede Gas Co. v. St. Charles Cnty.*, 713 F.3d 413, 419-20 (8th Cir. 2013). The absence of a likelihood of success on the merits strongly suggests that preliminary injunctive relief should be denied. *Barrett v. Claycomb*, 705 F.3d 315, 320 (8th Cir. 2013).

A showing of irreparable harm does not automatically mandate a ruling in the plaintiff's favor; the court must proceed to balance the harm to the defendant in granting the injunction. *Hill v. Xyquad, Inc.*, 939 F.2d 627, 630-31 (8th Cir. 1991). A preliminary injunction maintains a particular relationship between the parties in anticipation of a decision on the merits, pending completion of the litigation. *U.S. Dep't of Labor v. Wolf Run Mining Co., Inc.*, 452 F.3d 275, 280 (4th Cir. 2006).

The anti-retaliation provision of the FLSA renders it unlawful "to discharge or in any other manner discriminate against any employee because such employee has filed

7

any complaint or instituted or caused to be instituted any proceeding under or related to this chapter." 29 U.S.C. § 215(a)(3). Congress has provided that any employer who violates that section "shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages." 29 U.S.C. § 216(b). This protection is "intended to allow employees to seek vindication of their statutory rights without the fear of reprisal," but it also guards against the risk that retaliatory termination will deter other similarly situated employees from protecting their own rights. See *Clincy v. Galardi S. Enters., Inc.*, No. 1:09–CV–2082–RWS, 2009 WL 2913208, at *2 (N.D. Ga. Sept. 2, 2009); *see also Holt v. Continental Group, Inc.*, 708 F.2d 87, 91 (2d Cir. 1983) (stating retaliatory discharge carries risk of deterring employees from protecting statutory rights). To establish a "prima facie case of FLSA retaliation, a plaintiff is required to demonstrate that (1) she engaged in activity protected under [the] act; (2) she subsequently suffered adverse action by the employer; and (3) a causal connection existed between the employee's activity and the adverse action." *Wolf v. Coca–Cola Co.*, 200 F.3d 1337, 1342–43 (11th Cir. 2000); *see Espinoza v. Galardi S. Enterprises, Inc.*, No. 14-21244-CIV, 2014 WL 6473236, at *5 (S.D. Fla. Nov. 18, 2014); *see also Clincy*, No. 1:09–CV–2082–RWS, 2009 WL 2913208, at *2 (finding injunction and tolling of statute of limitations was appropriate in an FLSA collective action involving exotic dancers); *Allen v. Suntrust Banks, Inc.*, 549 F. Supp. 2d 1379, 1383 (N.D. Ga. 2008) (irreparable harm is found in forcing individuals with FLSA claims to choose between pursuing their claims and a severance package).

"Because formal notice to putative FLSA collective members is provided after conditional certification has been approved by the district court," *ex parte* communication with putative FLSA collective members about the case before it has been conditionally certified as a collective action "has an inherent risk of prejudice and opportunities for impropriety." *Billingsley v. Citi Trends, Inc.*, 560 F. App'x 914, 921 (11th Cir. 2014). A district court's authority to control counsels' conduct in a § 216(b) collective action includes the authority to prevent confusion and unfairness concerning an FLSA collective action. *Id.*; see *Hoffmann–La Roche v. Sperling*, 493 U.S. 165, 169–71 (1989). "Indeed, because of the potential for abuses in collective actions, such as unapproved, misleading communications to absent class members, 'the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way.'" *Billingsley*, 560 Fed. App'x at 921 (quoting *Hoffman-La Roche*, 493 U.S. at 170–71). The district court also has the responsibility to insure that all parties act fairly while the court decides whether and how the action will move forward under the FLSA. *Id.* "Because the damage from misstatements could well be irreparable, the district court must be able to exercise its discretion to attempt to correct the effects of such actions." *Id.* at 924. "[A] district court's power to manage a class action include[s] the power to prohibit a defendant from making 'unsupervised, unilateral communications with the plaintiff class.'" *Id.* at 923-24 (quoting *Kleiner v. First Nat'l Bank of Atlanta*, 751 F.2d 1193, 1203 (11th Cir. 1985); *see also Rogers v. WEBstaurant Store, Inc.*, NO. 4:18-CV-00074-JHM, 2018 WL 3058882, at *6 (W.D. Ky. June 20, 2018) (ordering corrective notice to be sent in light of defendant's two emails to its employees, finding that the emails

"discourage[] potential the plaintiffs from joining the suit or chill[] participation in the collective action.").

"In a class-action lawsuit, a district court may not order restraints on speech under Fed. R. Civ. P. 23(d) except when justified by actual or threatened misconduct of a serious nature." *Great Rivers Co-op. of Se. Iowa v. Farmland Indus., Inc.*, 59 F.3d 764, 766 (8th Cir. 1995).[4] "Before entry of such an order, there must be a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Id.*; *see Gulf Oil v. Bernard*, 452 U.S. 89, 101 (1981). A limited restriction—such as precluding a defendant from soliciting class members to opt out of the litigation—will be justified if the court finds that defendants have improperly communicated with plaintiffs. *Id.* The court may consider a curative notice from the court, at the expense of those at fault, giving the correct information. *Id.* "[A]n order limiting communications between parties and potential class members should be based on a clear record and specific findings that reflect a weighing of the need for a limitation and the potential interference with the rights of the parties." *Gulf Oil v. Bernard*, 452 U.S. 89, 101 (1981). Further, the order should be carefully drawn in a way that limits speech as little as possible while also protecting the rights of the parties. *Great Rivers Co-op*, 59 F.3d at 766. Before entering an order, the court should be satisfied (1) that "a particular form of communication has occurred or is threatened to occur" and (2) that the

---

[4] Though *Farmland* involved a Rule 23(d) class action, courts have recognized that the same standards governing communications with putative plaintiffs apply to collective and class actions. *Chen-Oster v. Goldman, Sachs & Co.*, 449 F. Supp. 3d 216, 258 n.35 (S.D.N.Y. 2020); *see, e.g., Bernhardi v. Lowe's Cos.*, No. 03-CV-6372, 2005 WL 8165980, at *2 n.1 (W.D.N.Y. Apr. 11, 2005) ("While there exist substantial procedural differences between class actions brought pursuant to Rule 23 and collective actions . . . communications between parties to a collective action are evaluated in the same manner as communications between parties to a Rule 23 class action").

10

communication is "abusive in that threatens the proper functioning of the litigation." *Ross v. Wolf Fire Protection, Inc.*, 799 F. Supp. 2d 518, 526 (D. Md. 2011).

The FLSA has a two-year statute of limitations except in the case of willful violations, for which the statute of limitations is three years. *See* 29 U.S.C. § 255(a). By statute, the limitations period for an opt-in plaintiff continues to run until the plaintiff files a written consent to join the action. 29 U.S.C. § 256(b). The FLSA statute of limitations, like any other federal limitations period, is subject to the doctrine of equitable tolling." *Beetler v. Trans-Foam, Inc.*, No. 5:11cv132, 2011 WL 6130805, *4 (N.D. Ohio Dec. 8, 2011). Courts apply equitable tolling most frequently where "the plaintiff is actively misled by the defendant about the cause of action or is prevented in some extraordinary way from asserting his rights." *Teemac v. Henderson*, 298 F.3d 452, 457 (5th Cir. 2002); *see also Baldwin Cnty. Welcome Ctr. v. Brown*, 466 U.S. 147, 151 (1984)(stating that equitable tolling can apply in cases of inadequate notice to claimant and affirmative misconduct on the part of a defendant).

Under 29 U.S.C. § 256, an opt-in class member's claim for relief under FLSA does not commence until the date the opt-in member's written consent to join the representative action is filed. *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 464 (3d Cir. 1994). The notice period under the FLSA generally should be measured from the date of the court's order granting the motion for conditional certification, not from the date that the complaint was filed. *Ritz v. Mike Rory Corp.*, No. 12 CV 367 (JBW)(RML), 2013 WL 1799974, at *3 (E.D.N.Y. Apr. 30, 2013); *see also Doucoure v. Matlins Food, Inc.*, 554 F. Supp. 2d 369, 373 (E.D.N.Y. 2008) (stating the end point for the lookback period for providing notice is generally the date of the notice, i.e., notice of pendency would be provided to potentially

similarly-situated plaintiffs employed by defendant in three-year period preceding date of the notice); *Ritz,* 12 CV 367 (JBW)(RML), 2013 WL 1799974, at *3.

## III. DISCUSSION

The Court finds the plaintiffs have demonstrated a substantial likelihood of success on the merits of their underlying retaliation claim. In this instance, the requirement of substantial likelihood of success on the merits refers to the FLSA retaliation claim, not the underlying FLSA claim. *See e.g., Bailey v. Gulf Coast Transp., Inc.*, 280 F.3d 1333, 1337 (11th Cir. 2002) (rejecting the defendants' argument that a final adjudication finding that they were the plaintiffs' employers was necessary for reinstatement under FLSA anti-retaliation provision). The plaintiffs need not show likelihood of success on the underlying issue of classification because they have shown a likelihood of success on the retaliation claim. The plaintiffs and potential opt-ins have shown that they have been threatened with lawsuits and other adverse consequences, have been discouraged from participating in this action, at least one putative plaintiff has been fired, and several have been sued for defamation in state court. It is clear from the record that participation in this lawsuit is the reason for the adverse actions. This type of conduct represents a flagrant violation of the FLSA's anti-retaliation provision. The plaintiffs have shown the conduct can and has chilled or interfered with the exercise of their FLSA rights.

The plaintiffs have also demonstrated that irreparable harm will be suffered absent the injunction. The anti-retaliation provision of the FLSA is intended to allow employees to seek vindication of their statutory rights without the fear of reprisal. The evidence shows that the defendants are likely to persist in such conduct. There is evidence that

potential opt-ins have been dissuaded from participating in this action. Thus far, the defendants terminated one potential opt-in, threatened other potential participants, and filed suit against present and former employees. Under the present facts, it appears likely that, absent an injunction, other similarly situated employees of Club Omaha will be deterred from joining the action as a result of the defendants' actions.

Also, the Court finds that the harm to the plaintiffs in the absence of an injunction will exceed any harm suffered by the defendants as a result of a preliminary injunction. Enjoining further retaliatory conduct is justified by the defendants' serious actual and threatened misconduct. The Court also finds that an injunction in this case will not disserve the public interest. Such equitable relief is specifically contemplated by the FLSA in order to protect the rights of employees. The plaintiffs have therefore satisfied the requirements necessary for a preliminary injunction.

Further, the plaintiffs have shown that appropriate language addressing and remedying the defendants threatening conduct should be incorporated into any conditional collective class notice.[5] Also, in view of evidence of affirmative misconduct by the defendants' and fear of reprisal on the part of individuals similarly situated to the plaintiffs, proper grounds exist to toll the statute of limitations for a limited period until similarly situated individuals may be made aware that they may pursue FLSA claims without the fear of retaliation or reprisal. Accordingly,

---

[5] The Court will include such corrective language in any collective class certification order and notice. The Court will add language that informs potential opt-ins that the law prohibits retaliation against employees for exercising their rights under the FLSA and that the defendants are prohibited from discharging or retaliating against them for choosing to participate in this action.

13

IT IS ORDERED:

1. The plaintiffs' renewed motion for a preliminary injunction (Filing No. 75) is granted.

2. The defendants will be prohibited from retaliating or discriminating in any way against the plaintiffs or similarly situated individuals for involvement with or participation in this action or any other pursuit of claims under the FLSA; a separate injunction will issue.

3. The statute of limitations for potential opt-in the plaintiffs is tolled until this Court has ruled on the plaintiffs' Motion for Conditional Class Certification (Filing No. 14).

Dated this 3rd day of December, 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge