## UNITED STATES DISTRICT COURT
## DISTRICT OF NEBRASKA

| | |
|---|---|
| ANDREA GROVE and<br>CHRYSTINA WINCHELL,<br>individually and on behalf<br>of similarly situated individuals,<br><br>Plaintiffs,<br><br>v.<br><br>MELTECH, INC.,<br>H&S CLUB OMAHA, INC.,<br> SHANE HARRINGTON, and<br>BRAD CONTRERAS,<br><br>Defendants. | NO. 8:20-CV-00193-JFB-MDN |

## PLAINTIFFS' MOTION FOR CLASS CERTIFICATION

### I.     INTRODUCTION

Pursuant to Rule 23 of the Federal Rules of Civil Procedure, Plaintiffs Andrea Grove and

Chrystina Winchell, through counsel, hereby move for certification for a class of all individuals

who worked as exotic dancers at Club Omaha at any time within the three years prior to the

filing of this lawsuit who were misclassified as independent contractors and who were not paid

minimum wage or overtime compensation as required by the Nebraska Wage and Hour Act,

Neb. Rev. Stat. §48-1201 *et. seq.* (the "Nebraska Class").[1]  Plaintiffs have brought this case

---

[1] In their Complaint, Plaintiffs also allege claims under the FLSA. See Second Amended
Complaint, Dkt. 177, Counts I and II.  In December 2020, the Court conditionally certified a
collective of "all individuals who currently work and/or previously worked at Club Omaha as
exotic dancers and were classified as independent contractors at any time in the three years
preceding the date of this order." Dkt. 85, p.14.

1

against Defendants Meltech, Inc., H&S Club Omaha, Inc. Shane Harrington, and Brad Contreras alleging that the Defendants misclassified them and other exotic dancers as independent contractors under the Fair Labor Standards Act and the Nebraska Wage and Hour Act, Neb. Rev. Stat. §48-1201 *et seq.*, and, as a result, failed to pay them the legally required minimum wage and overtime compensation for hours worked in excess of 40 in a week.  Plaintiffs now seek class certification of their claims under Nebraska law.

Defendants' nightclub, Club Omaha, is an establishment where live nude dance entertainment is presented to adult members of the general public. To provide this entertainment, Defendants rely on Plaintiffs and other exotic dancers to perform stage dances, one-on-one and private dances for Defendants' customers. Plaintiffs and other exotic dancers do not receive any wages from Club Omaha. Instead, all of their compensation comes in the form of tips paid by customers for dances. Dancers are required to pay a house fee to Club Omaha, and fees for not going up on stage, and leaving a shift early, among others, and face discipline for violating the club's rules. Club Omaha requires dancers to tip out its managers, security staff, and DJ. Dancers are subject to a host of rules and requirements for their appearance and conduct, which Club Omaha managers regularly reinforce in a group chat which all dancers are required to take part in.

Plaintiffs allege that they and other exotic dancers were improperly classified as independent contractors, and, as a result, were not paid minimum wage or overtime compensation as required by the Nebraska Wage and Hour Act, Neb. Rev. Stat. §48-1201 et seq. Nebraska courts use a ten (10) factor common law balancing test for determining whether an individual is an employee or as an independent contractor under the Nebraska Wage and Hour Act. Williams v. Allstate Indemnity Co., 266 Neb. 794, 801 (2003). As part of this analysis,

2

courts consider (1) the extent of control which, by the agreement, the employer may exercise

over the details of the work; (2) whether the employee is engaged in a distinct occupation or

business; (3) the type of occupation, with reference to whether, in the locality, the work is

usually done under the direction of the employer or by a specialist without supervision; (4) the

skill required in the particular occupation; (5) whether the employer or the employee supplies the

instrumentalities, tools, and the place of work for the person doing the work; (6) the length of

time for which the employee is engaged; (7) the method of payment, whether by the time or by

the job; (8) whether the work is part of the regular business of the employer; (9) whether the

parties believe they are creating an agency relationship; and (10) whether the employer is or is

not in business. Id. The "right of control is the chief factor distinguishing an employment

relationship from that of an independent contractor." Mays v. Midnite Dreams, Inc., 300 Neb.

485, 496 (2018) quoting Kime v. Hobbs, 252 Neb. 407, 414 (1997)).[2]

Defendants exercised strict control over key aspects of Plaintiffs' and the Nebraska Class

Members' work. Club Omaha set the prices customers were required to pay for dances, and

determined the portion of the pay which Plaintiffs and other dancers could keep. When the

dancers reported for their shifts, the Defendants required them to comply with any rules and

requirements regarding their appearance and conduct that the Defendants chose to impose in

their own discretion, including a prohibition on wearing robes on the floor of the club, and a

requirement that dancers wear heels at all times. Defendants subjected Plaintiffs and other exotic

---

[2] In Mays, another exotic dancer case, the court found the dancers to be employees under the NWHA. See Mays, 915 N.W.2d at 83–84 ("Mays' work was a vital part of [defendants'] business" and defendants "instituted the 'house rules,' which significantly controlled the manner in which the dancers performed their work, including the dancers' movement on stage and inside the club, the type of dress worn by the dancers, the dancers' cleaning duties, their schedule of performing, their contact with customers, the rates they charged . . .").

dancers to discipline, including termination, suspension, and fines, if the dancers failed to follow the rules and regulations set forth by Club Omaha, its owner and managers.

Furthermore, as shown below, Plaintiffs and Nebraska Class Members meet the requirements for class certification under Rule 23. They all performed the same work – adult exotic entertainment – and were subject to the same rules and policies. They suffered a common violation – namely, being improperly classified as independent contractors and denied minimum wage and overtime compensation. The evidence used to adjudicate Plaintiffs' and the class members' claims centers on Defendants' uniform rules, classification and compensation policies, which apply to all members of the Nebraska Class. Certification of the Nebraska Class under Rule 23 is therefore proper.[3]

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Club Omaha is a strip club located in Omaha, Nebraska. See Sec. Am. Compl., Dkt. 177, ¶ 3.[4] Plaintiffs and other dancers working at Club Omaha perform stage dances, one-on-one and private dances for Club Omaha's customers. Grove Decl., Ex. B, ¶ 3; Winchell Decl., Ex. C, ¶ 3; Blanco Decl., Ex. D ¶ 3; Hicks Decl., Ex. E, ¶ 2; see also Smith Decl., Dkt. 16.4 ¶ 3; Schueth Decl., Ex. 16.5, ¶ 3. Club Omaha classified Plaintiffs and and other exotic dancers working at club Omaha as independent contractors. Grove Decl., Ex. B, ¶ 2; Winchell Decl., Ex. C, ¶ 4; Blanco Decl., Ex. D ¶ 2; Hicks Decl., Ex. E, ¶ 3; see also Smith Decl., Dkt. 16.4, ¶ 4; Schueth Decl., Dkt. 16.5, ¶ 2. In reality, however, Defendants exercised strict control over all aspects of the dancers' work. Club Omaha communicates its various rules and requirements for dancers

---

[3] A proposed Class Action Notice is attached hereto as Exhibit A.

[4] Club Omaha is owned by Shane Harrington and managed by Meltech, Inc. Dkt. 177 ¶ 1. Defendant Brad Contreras currently manages the day-to-day operations of Club Omaha. Id.

through a list of rules set out in the dancers' agreements (examples of which can be found at Dkts. 46.1- 46.12.); verbal directions form the club managers; and a Club Omaha Facebook group chat, in which all dancers were required to participate. Grove Decl., Ex. B, ¶ 4; Winchell Decl., Ex. C, ¶ 7; Blanco Decl., Ex. D ¶ 5; Hicks Decl., Ex. E, ¶ 5. Some examples of messages from this chat are attached as exhibits to the Grove, Blanco, and Hicks declarations (Exs. B, D, E.).

Plaintiffs and other dancers working at Club Omaha were required to work a minimum of two weekday shifts, between Sunday and Thursday. Grove Decl., Ex. B, ¶ 5; Winchell Decl., Ex. C, ¶ 8; Blanco Decl., Ex. D ¶ 7; Hicks Decl., Ex. E, ¶ 7; see also Smith Decl., Dkt. 16.4, ¶ 9. If a dancer missed one of the two required weekday shifts, was required to pay a $100 fee to Club Omaha to work on the weekend. Grove Decl., Ex. B, ¶ 6; Blanco Decl., Ex. D ¶ 7. More recently, Club Omaha has encouraged dancers to come in three nights a week, and has threatened termination for dancers who do not meet this requirement. Winchell Decl., Ex. C, ¶ 8; Blanco Decl., Ex. D ¶ 8; Hicks Decl., Ex. E, ¶ 7.

Dancers were required to pay a house fee of approximately $30 for each shift; this house fee went up by $10 every half hour after the club opened. Grove Decl., Ex. B, ¶ 9; Winchell Decl., Ex. C, ¶ 10; Blanco Decl., Ex. D ¶ 10; see also Smith Decl., Dkt. 16.4, ¶ 8; Schueth Decl., Dkt. 16.5, ¶ 5. Dancers were required to work a minimum of eight hours during each of their scheduled shifts, and had to pay a fee to leave a shift early. Grove Decl., Ex. B, ¶ 7; Winchell Decl., Ex. C, ¶ 11; Blanco Decl., Ex. D ¶ 11; Hicks Decl., Ex. E, ¶ 10; see also Smith Decl., Ex. 16.4, ¶ 6; Schueth Decl., Ex. 16.5, ¶ 4. There were around 20 dancers working at Club Omaha on busy nights. Grove Decl., Ex. B, ¶ 19; Winchell Decl., Ex. C, ¶ 5; Blanco Decl., Ex. D ¶ 4.

During their shifts, the dancers performed onstage, and perform one-on-one dances for Club Omaha's customers. Grove Decl., Ex. B, ¶ 3; Winchell Decl., Ex. C, ¶ 3; Blanco Decl., Ex. D ¶ 3; Hicks Decl., Ex. E, ¶ 2; see also Smith Decl., Dkt. 16.4 ¶ 3; Schueth Decl., Ex. 16.5, ¶ 3. The dancers did not receive wages from Club Omaha for this work. Grove Decl., Ex. B, ¶ 12; Winchell Decl., Ex. C, ¶ 3; Blanco Decl., Ex. D ¶ 3; Hicks Decl., Ex. E, ¶ 4; see also Smith Decl., Dkt. 16.4, ¶ 10; Schueth Decl., Dkt. 16.5, ¶ 10. Dancers were required to go up on stage at regular intervals during their shifts; if a dancer did not come up on stage during her shift, she had to pay a fee of up to $100 to Club Omaha. Grove Decl., Ex. B, ¶ 15; Winchell Decl., Ex. C, ¶ 12; Blanco Decl., Ex. D ¶ 12; Hicks Decl., Ex. E, ¶ 11; see also Schueth Decl., Dkt. 16.5, ¶ 6. Club Omaha set the prices for private dances, and determined the portion of the price which the dancers could keep. Grove Decl., Ex. B, ¶ 13; Winchell Decl., Ex. C, ¶ 13; Hicks Decl., Ex. E, ¶ 6; see also Smith Decl., Dkt. 16.4, ¶ 11; Schueth Decl., Dkt. 16.5, ¶ 9. For example, customers paid $30 for a single-song private dance, with the dancer keeping $20. Grove Decl., Ex. B, ¶ 13; Winchell Decl., Ex. C, ¶ 13; see also Smith Decl., Dkt. 16.4, ¶ 11; Schueth Decl., Dkt. 16.5, ¶ 9. Dancers were required to do a minimum of two private dances per shift; If a dancer had less than 2 private dances during a shift, she had to pay a $20 fee to Club Omaha. Grove Decl., Ex. B, ¶ 14; Hicks Decl., Ex. E, ¶ 13. At the end of each shift, dancers were required to tip out the manager, security and DJ. Grove Decl., Ex. B, ¶ 16; Winchell Decl., Ex. C, ¶ 14; Blanco Decl., Ex. D ¶ 13; Hicks Decl., Ex. E, ¶ 12; see also Smith Decl., Dkt. 16.4, ¶ 13; Schueth Decl., Dkt. 16.5, ¶ 8.

Plaintiff and other dancers are required to follow Club Omaha's rules regarding their appearance and conduct. Grove Decl., Ex. B, ¶ 17; Winchell Decl., Ex. C, ¶ 15; Hicks Decl., Ex. E, ¶ 14. For example, dancers were prohibited from wearing robes or coats while on the floor of

the club. Grove Decl., Ex. B, ¶ 17; Winchell Decl., Ex. C, ¶ 15. Dancers were required to remain

on the floor of the club and engage with customers even if they were not performing a private

dance. Grove Decl., Ex. B, ¶ 18; Hicks Decl., Ex. E, ¶ 14. Dancers were required to participate in

the Club Omaha and to read all the posts in this group daily. Grove Decl., Ex. B, ¶ 4; Winchell

Decl., Ex. C, ¶ 7; Blanco Decl., Ex. D ¶ 5; Hicks Decl., Ex. E, ¶ 5. Dancers were routinely

reprimanded, fined, and threatened with termination by Club Omaha managers for failing to

follow the Club's rules, including through the Facebook group chat. Grove Decl., Ex. B, ¶ 18;

Winchell Decl., Ex. C, ¶¶ 9, 14; Blanco Decl., Ex. D ¶¶ 6, 13.

### III.    LEGAL STANDARD

A class action serves to conserve the resources of the court and the parties by permitting

an issue that may affect every class member to be litigated in an economic fashion.  Ebert v.

Gen. Mills, Inc., 823 F.3d 472, 477 (8th Cir. 2016) (citing Gen. Tel. Co. of Sw. v. Falcon, 457

U.S. 147, 155 (1982)).  In order to obtain class certification under Rule 23, Plaintiffs must show

that all four requirements of Rule 23(a), along with one of the requirements of Rule 23(b) is met.

In re. St. Judge Med., Inc., 425 F.3d 1116, 1119 (8th Cir. 2005).

> Rule 23(a) of the Federal Rules of Civil Procedure establishes four prerequisites to the
> maintenance of a class action: (i) 'numerosity'-the class must be 'so numerous that
> joinder of all members is impracticable'; (ii) 'commonality'-the presence of 'questions of
> law or fact common to the class'; (iii) 'typicality'-the claims or defenses of the class
> representative must be 'typical of the claims or defenses of the class'; and (iv) a class
> representative that will 'fairly and adequately protect the interests of the class.'

Paxton v. Union Nat. Bank, 688 F.2d 552, 559 (8th Cir. 1982) (quoting Fed. R. Civ. P. 23(a)).

To gain certification under Rule 23(b)(3), a class must also meet the Rule 23(b)(3) criteria of

predominance and superiority. In other words, Plaintiffs must show that common questions

"predominate over any questions affecting only individual members" and that class resolution be

"superior to other available methods for the fair and efficient adjudication of the controversy.'"

Amchem Products, Inc. v. Windsor, 521 U.S. 591, 592–93 (1997) (quoting Fed. R. Civ. P. 23(b)(3)).

## IV.   ARGUMENT

Due to the nature of independent contractor employment misclassification claims, "the United States Supreme Court [] [has] expressed a strong preference for rendering decisions on the classification of employees on [a] class wide basis."  De Giovanni v. Jani-King Int'l, Inc., 262 F.R.D. 71, 86 (D. Mass. 2009) (citing Nationwide Mut. Ins. Co. v. Darden, 503 U.S. 318, 327 (1992)) (determination of employment status "generally turns on factual variables within the employer's knowledge, thus permitting categorical judgements about the 'employee' status of claimants with similar job descriptions"); accord Thomas v. Matrix Corp. Servs., Inc., 2021 WL 3581298, at *3 (N.D. Ill. Aug. 17, 2012) ("class action remains the most efficient way to resolve [misclassification and deductions claims].").  Accordingly, courts routinely certify misclassification claims under Fed. R. Civ. P. 23,[5] particularly in cases involving exotic dancers.[6]

---

[5] See, e.g., Fleming v. Matco Tools Corp., 2021 WL 673445, at *10 (N.D. Cal. Feb. 21, 2021) (finding that common issues predominate in misclassification analysis); Kloppel v. HomeDeliveryLink, Inc., 2020 WL 2897014 at *10 (W.D.N.Y. June 3, 2020) (certifying class of delivery drivers where "liability hinges on whether [the employer] misclassified putative class members as independent contractors"); Carr v. Flowers Foods, Inc., 2019 WL 2027299 at *22 (E.D. Pa. May 7, 2019); Williams v. Sweet Home Healthcare, LLC, 325 F.R.D. 113, 126 (E.D. Pa. 2018); Venegas v. Global Aircraft Service, Inc., 159 F.Supp.3d 93, 99 (D. Me. 2016); Villalpando v. Exel Direct Inc., 303 F.R.D. 588, 610 (N.D. Cal. 2014); Meyer v. U.S. Tennis Ass'n, 297 F.R.D. 75, 88 (S.D.N.Y. 2013); Scovil v. FedEx Ground Package System, Inc., 886 F. Supp. 2d 45, 56 (D. Me. 2012); Hart v. Rick's Cabaret Int'l Inc., 2010 WL 5297221, at *7 (S.D.N.Y. Dec. 20, 2010).

[6] See Walsh v. Gilbert Enterprises, Inc., 2019 WL 1206885, at *5 (D.R.I. Mar. 14, 2019) ("Defendants' uniform classification of all class members as independent contractors makes it clear that common issues predominate"); DeGidio v. Crazy Horse Saloon and Rest., Inc., 2017

### A.  Plaintiffs Satisfy the Requirements of Rule 23(a)

#### 1.  The members of the class are so numerous that joinder is impracticable.

WL 5624310, at *11 (D.S.C. Jan. 26, 2017), aff'd and remanded sub nom. Degidio v. Crazy Horse Saloon and Rest. Inc, 880 F.3d 135 (4th Cir. 2018) ("Defendant employs a common set of pay policies and practices that Plaintiff alleges violate the South Carolina Payment of Wages Act. Whether this single set of policies in fact violates South Carolina law is common to Plaintiff and to each putative class member and can be answered on a class-wide basis"); Bonton v. Centerfold Entertainment Club, Inc., 2015 WL 2380300, *4 (W.D. Ark. May 19, 2015) (certifying class of exotic dancers alleging violations of Arkansas Minimum Wage Act); In re Penthouse Executive Club Comp. Litig., 2014 WL 185628, at *3 (S.D.N.Y. Jan. 14, 2014) ("Plaintiffs' common factual allegations and a common legal theory—that Defendants violated federal and state law by misclassifying them as independent contractors, failing to pay them wages, improperly requiring them to pay fees and improperly withholding their tips—predominate over any factual or legal variations among class members."); Hart v. Rick's Cabaret Intern., Inc., 60 F. Supp. 3d 447, 473 (S.D.N.Y. 2014) (denying defendant's motion to decertify Rule 23 class); Ruffin v. Entm't of the E. Panhandle, 2012 WL 5472165 (N.D. W. Va. Nov. 9, 2012) ("'at least two common questions of fact and law exist: (1) whether the entertainers were employees within the meaning of the WPCA; and (2) whether Defendants' practice of requiring the dancers to pay various fees and fines violates the assignment provisions of the WPCA."); see also, e.g., Cruz v. Manlo Enterprises, Inc. d/b/a Mario's Showplace ("Mario's Showplace"), Worchester, Civ. A. No. 2010-01931 at *1, 7 (Mass. Super. June 9, 2011) (certifying class of exotic dancers challenging illegal wage policies, including the club's requirement that they "pay a portion of their tips as fees and into a tip pool" that included disc jockeys and bouncers); Raposa v. Mardi Gras Entertainment, Inc. ("Mardi Gras"), Hampden Civ. A. No. 2010-00034 (Mass. Super. Dec. 11, 2013) (certifying classes of exotic dancers and bartenders at strip club on claims of misclassification and wage violations and noting that "notwithstanding whether the practice was voluntarily upheld, whether the defendants improperly required the bartenders to distribute portions of their tips is an issue common to all members of the putative [] class"); Sandoval v. M.J.F. Bowery Corp. d/b/a Ten's Show Club ("Ten's Show"), 2011 WL 5517330, at *4 (Mass. Super. July 22, 2011) (granting class certification to exotic dancers' challenge to uniform policy of misclassification and wage violations); Chaves v. King Arthur's Lounge, Inc., Suffolk, Civ. A. No. 07-2505 (Mass. Super. Jul. 31, 2009) (same); Vasquez v. Ye Olde Lamplighter II, Inc., Worcester, Civ. A. No. 2011-1610-D (Mass. Super Nov. 13, 2013) (same); Davis v. Déjà Vu Entertainment Enterp. of Minn., Inc., No. CT 92010727 (Minn. Dist. Ct. Dec. 16, 1992) (certifying class of exotic entertainers challenging independent contractor classification and resultant wage violations under Minnesota law); Doe v. Gold Club-S.F., LLC, No. 04-431683 (Calif. Superior Ct. June 8, 2005) (certifying class of exotic entertainers challenging independent contractor classification resultant wage and deduction violations under California law).

Rule 23(a)(1) requires that a class must be "so numerous that joinder … is impracticable."  "To be 'impracticable' does not mean that joinder must be impossible, but it does require a showing that it would be extremely difficult or inconvenient to join all members of the class." Downing v. Goldman Phipps PLLC, 2015 WL 4255342, at *3 (E.D. Mo. July 14, 2015) (quoting Morgan v. United Parcel Serv. of Am., Inc., 169 F.R.D. 349, 355 (E.D. Mo. 1996)). "Courts have typically established no arbitrary or rigid rules regarding the required size of a class, and what constitutes impracticality depends upon the facts of each case." Nerland v. Caribou Coffee Co., Inc., 564 F. Supp. 2d 1010, 1030 (D. Minn. 2007) (citing In re Select Comfort Corp. Securities Litigation, 202 F.R.D. 598, 603 (D. Minn. 2001); Parkhill v. Minnesota Mut. Life Ins. Co., 188 F.R.D. 332, 337 (D. Minn. 1999)). Some of the factors courts consider as part of the numerosity inquiry are: the number of persons in the class, the nature of the action, the size of the individual claims, the inconvenience of trying individual suits, and any other factor relevant to the practicability of joining all the class members. See Downing, 2015 WL 4255342, at *3.

Here, the numerosity requirement is met because at least forty (40) dancers have worked at Club Omaha as independent contractors within the three years prior to the filing of this lawsuit.[7] Joinder is impracticable due to the relatively small size of each class member's claims and due to the nearly identical nature of each class member's claims.  Judicial economy is best served by adjudicating these 40 individuals' claims in a single proceeding.

---

[7] Defendants have provided Plaintiffs' Counsel with a list of more than 150 collective action members who worked at Club Omaha during the past three years. All of these individuals are also part of the Nebraska Rule 23 class.

**2.   The claims at issue in this case satisfy the commonality requirement.**

Rule 23(a)(2) requires Plaintiffs to demonstrate that "there are questions of law or fact common to the class." Ebert, 823 F.3d 478.  "Commonality requires the plaintiff to demonstrate that the class members have suffered the same injury." Luiken v. Domino's Pizza, LLC, 705 F.3d 370, 376 (8th Cir. 2016) (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 349 (2011).  As one court has explained, "a policy that was applied uniformly to all class members" is sufficient to demonstrate commonality.  Huyer v. Wells Fargo & Co., 295 F.R.D. 332, 339 (S.D. Iowa 2013).

Here, the crux of Plaintiffs' claims involves a uniform policy implemented by Defendants – that is, classifying dancers as independent contractors and failing to pay them minimum wage and overtime. See, e.g., Abarca v. Werner Enterprises, Inc., 2018 WL 1136061, at *9 (D. Neb. Feb. 28, 2018), report and recommendation adopted,  2018 WL 1392909 (D. Neb. Mar. 20, 2018) ("Plaintiffs further allege that Werner's uniform paycheck deduction policies, including the Personal Bond Policy and the $4 transaction fee charged by Werner, are unlawful under . . . Nebraska law. These deduction policies . . . can be evaluated on a classwide basis without reference to individual circumstances."); Baouch v. Werner Enterprises, Inc., 2014 WL 1884000, at *3 (D. Neb. May 12, 2014) (certifying class of employees subject to uniform compensation policies). Thus, the commonality requirement is met in this case.

**3.   Plaintiffs' claims satisfy the typicality requirement.**

Rule 23(a)(3) requires Plaintiffs to show that their claims are typical of those of other class members. "The requirement that the claims of the class representative be typical of the claims of the class is met if there are 'other members of the class who have the same or similar grievances as the plaintiff.'" Huyer, 295 F.R.D. at 339 (quoting Alpern v. UtiliCorp United, Inc., 84 F.3d 1525, 1540 (8th Cir.1996) (internal citations omitted)). This requirement "is fairly easily

11

met so long as other class members have claims similar to the named plaintiff." DeBoer v.

Mellon Mortg. Co., 64 F.3d 1171, 1174 (8th Cir. 1995).

     The typicality requirement is met here because the misclassification claims asserted by

Plaintiffs are identical to those of the Nebraska Class Members and the damages sought by

Plaintiffs – namely unpaid minimum wage and overtime compensation – are also identical to the

damages sought by the Nebraska Class Members.[8] See Abarca, 2018 WL 1136061, at *10

(typicality requirement met where Plaintiffs "held the same position as all class members, had

the same duties as defined by the Driver Handbook, and were subject to the same uniform

policies and practices"); Petrone, 2013 WL 3479280, at *2 ("defendants' systematic denial of

compensation for breaks and certain periods of sleeper-berth time . . . are identical to the claims

of other potential class members. Nothing about the class representatives' claims mark them as

unique."); Cortez v. Nebraska Beef, Inc., 266 F.R.D. 275, 294 (D. Neb. 2010) (typicality

requirement met where the named plaintiffs' claims are not based on conduct unique to them but

rather on a compensation system which affects all class members."); M.B. by Eggemeyer v.

Corsi, 327 F.R.D. 271, 281 (W.D. Mo. 2018) (typicality exists where "the claims of the proposed

class arise from the same course of conduct . . . the named plaintiffs and the putative class

members are all subject to the same policies and procedures, and therefore are all, allegedly,

subject to a substantial risk of harm."); Lane v. Lombardi, 2012 WL 5462932 (W.D. Mo. Nov. 8,

---

[8] Importantly, "[f]actual variations in the individual claims will not normally
preclude class certification if the claim arises from the same event or course of conduct as the
class claims, and gives rise to the same legal or remedial theory." Abarca, 2018 WL 1136061, at
*9 (quoting Alpern, 84 F.3d at 1540). Thus, for example, differences in the number of hours
worked by dancers, and/or differences in whether dancers worked more than 40 hours a week
will not impact the typicality analysis.

2012) (typicality requirement met where the plaintiff's Section 1983 claim was "based on the same policy and proposed conduct of Defendants" as the claims of other putative class members); <u>Rentschler v. Carnahan</u>, 160 F.R.D. 114, 116 (E.D. Mo. 1995) (typicality requirement satisfied where plaintiffs and the putative class members were subjected to the "same allegedly unlawful policies and conditions" and their claims were "all based on the same legal theories, the same arguments of unconstitutionality").

### 4. Plaintiffs and their counsel adequately represent the interests of the class.

Rule 23 (a)(4) requires that Plaintiffs "fairly and adequately protect the interest of the class." "The inadequacy inquiry 'serves to uncover conflicts of interest between named parties and the class they seek to represent.'" <u>Portz v. St. Cloud State U.</u>, 297 F. Supp. 3d 929, 947 (D. Minn. 2018) (quoting <u>Amchem</u>, 521 U.S. at 625). "The focus of Rule 23(a)(4) is whether: (1) the class representatives have common interests with the members of the class, and (2) whether the class representatives will vigorously prosecute the interests of the class through qualified counsel." <u>Paxton</u>, 688 F.2d at 562.

The adequacy requirement is met here because Plaintiffs seek the same relief as the Nebraska class members -namely, namely unpaid minimum wage and overtime compensation and will therefore adequately represent the interests of the class. See <u>DeGidio</u>, 2017 WL 5624310, at *14 ("Plaintiff suffered the same alleged injury as the other class members. Their recovery will not interfere with or take away from that of any other class member. Plaintiffs and all class members stand to gain from a positive resolution of their legal claims."). In addition, Plaintiffs' counsel has significant experience in litigating class actions, and has litigated a number of cases involving misclassification of exotic dancers in recent years, and they will therefore adequately protect the interests of the class.

13

**B.  Plaintiffs Satisfy the Requirements of Rule 23(b)(3).**

"In addition to satisfying the Rule 23(a) prerequisites, [Plaintiffs] must further prove that they meet the requirements of Rule 23(b)(1), (b)(2), or (b)(3)." Amchem, 521 U.S. 614.[9]  Rule 23(b)(3) requires that common questions "predominate over any questions affecting only individual members" and that class resolution be "superior to other available methods for the fair and efficient adjudication of the controversy."  Id. at 593. Plaintiffs in this case meet the requirements of Rule 23(b)(3).

**1.  Common issues of law and fact predominate.**

"The predominance inquiry requires an analysis of whether a prima facie showing of liability can be proved by common evidence or whether this showing varies from member to member." Ramthun v. Bryan Career College-Inc., 93 F. Supp. 3d 1011, 1019 (W.D. Ark. 2015) (quoting Halvorson v. Auto–Owners Ins. Co., 718 F.3d 773, 778 (8th Cir. 2013)). "To determine whether a putative class representative has established that the predominance requirement is met, the Court must examine the extent to which liability as to each putative class member may be established by common evidence." Ramthun, 93 F. Supp. 3d at 1019 (quoting Avritt v. Reliastar Life Ins. Co., 615 F.3d 1023, 1029 (8th Cir.2010)). "The predominance requirement 'does not require that common questions be dispositive or significant,' simply that they predominate."  In

---

[9] The Eighth Circuit "has not addressed ascertainability as a separate, preliminary requirement. Rather, this court adheres to a rigorous analysis of the Rule 23 requirements, which includes that a class 'must be adequately defined and clearly ascertainable.'"  Sandusky Wellness Ctr., LLC v. Medtox Sci., Inc., 821 F.3d 992, 996 (8th Cir. 2016). "A class may be ascertainable when its members may be identified by reference to objective criteria."  In re Dollar Gen. Corp. Motor Oil Mktg. and Sales Practice Litig., 2019 WL 1418298, at *12 (W.D. Mo. Mar. 21, 2019) (quoting McKeage v. TMBC, LLC, 847 F.3d 992, 998 (8th Cir. 2017)).  The requirement of ascertainability is met here, since the proposed class members are an easily defined group: all individuals who worked at exotic dancers at Club Omaha during the past three years, who were classified as independent contractors, and who did not receive minimum wage and overtime compensation.

re Dollar Gen. Corp. Motor Oil Mktg. and Sales Practices Litig., 2019 WL 1418292, at *15 (W.D. Mo. Mar. 21, 2019) (quoting In re Potash, 159 F.R.D. at 699).

The predominance requirement is met in this case because Plaintiffs' claims and those of the Nebraska class revolve around a common question: whether they were misclassified as independent contractors and denied minimum wage and overtime compensation. See DeGidio, 2017 WL 5624310, at *15 ("the record shows Defendant applies the same pay policies and practices to Plaintiff and each of the class members. Thus, Defendant's liability, and whether its house fees, tips, and golden dollar practices are legal, are issues that are common to the class, and predominate over any individual issues."); Walsh, 2019 WL 1206885, at *4 ("Defendants' uniform classification of all class members as independent contractors makes it clear that common issues predominate."). Here, as in DeGidio and Walsh, Plaintiffs and the class members were subject to common uniform classification and compensation policies, and meet the predominance requirement. In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 958 (9th Cir. 2009) ( "uniform corporate policies will often bear heavily on questions of predominance" and that "centralized rules, to the extent they reflect the realities of the workplace, suggest a uniformity among employees that is susceptible to common proof");; Petrone, 2013 WL 3479280, at *3 (predominance met for claims under NWHA where "[o]n their face, plaintiffs' claims suggest a common injury among the class members: trainees in Werner's program logged their time in the same way, compensation for all class members was calculated in the same way based on those logs, and the compensation calculation violated Nebraska statutes when it failed to compensate for certain periods logged as 'off duty'").

Analysis of the misclassification claim under Nebraska law will turn almost entirely on common, classwide evidence – the common policies Defendants imposed with regard to

15

discipline, fees, and tipping-out, appearance, scheduling, and conduct; the standard work

performed by exotic dancers; and the dancers' compensation. As the court pointed out in

analyzing another exotic dancer's NWHA claims in Mays, "the 'right of control is the chief

factor distinguishing an employment relationship from that of an independent contractor.'"

Mays, 915 N.W.2d at 83-84. In Mays, the court found that "the 'house rules' imposed on Mays

controlled almost every aspect of her employment" and weighed in favor of a finding that she

was an employee. Id. at 84.[10] the court also found significant the fact that defendants "were in the

business of operating a club which offered fully nude, live entertainment. Mays' work was a vital

part of that regular business." Id. Here, the court can easily determine, on a classwide basis,

whether the various rules and policies Club Omaha required Plaintiffs and other dancers to

follow warrant a finding that the dancers were employees under the NWHA.[11] Likewise, an

analysis of the nature of Defendants' business, which the Mays court found to be salient, will be

based on evidence of Club Omaha's activities, which is common across all class members.

### 2. Class adjudication is superior to other available methods.

To meet the superiority requirement of Rule 23, Plaintiffs must demonstrate that "a class

action is superior to other available methods for the fair and efficient adjudication of the

controversy." Fed. R. Civ. P. 23(b)(3)). "A class action is a superior form of litigation if it is

---

[10] The court in Walsh, like the court in Mays, considered a right to control test and concluded that "factual differences in class members' actual treatment at the Club are immaterial; the only significance for this test is the Club's ability to control the entertainers. This question is common to all class members and will predominate over any individual questions of actual treatment or control." Walsh, 2019 WL 1206885, at *4.

[11] For a sampling of these rules, the Court can review, in addition to the declarations and supporting documents submitted herewith, the various dancer agreements submitted by Defendants in support of their Motions to Dismiss and for Summary Judgment. See, e.g., Dkts. 46.1- 46.12.

capable of addressing "the rights of groups of people who individually would be without effective strength to bring their opponents into court at all." Hartley v. Suburban Radiologic Consultants, Ltd., 295 F.R.D. 357, 377 (D. Minn. 2013) (quoting Amchem, 521 U.S. at 617). As part of this analysis, courts consider (1) the class members' interests in individually controlling the litigation; (2) the extent and nature of any litigation concerning the controversy already begun by or against class members; (3) the desirability of concentrating the litigation of the claims in the particular forum; and (4) the likely difficulties in managing a class action. See Fed. R. Civ. P. 23(b)(3)(A)-(D)).

In this case, a class action provides a superior method for resolving the Nebraska Class Members' wage and hour claims, and provides an efficient and effective mechanism for adjudicating the Nebraska Class Members' claims in a single proceeding. Walsh, 2019 WL 1206885, at *5 ("it would be inefficient for the parties and the Court to require each class member to bring an individual claim when a class action is available and appropriate. This Court reached the same conclusion in Pizzarelli and Levi, just as numerous other courts have done in similar so-called exotic dancer misclassification cases."); see also Abarca, 2018 WL 1136061, at *14 ("The relatively small amount of damages at issue for each litigant compared to the cost and effort of filing an individual complaint provides little incentive for class members to pursue individual claims."); Cortez, 266 F.R.D. at 294 ("A class action is a superior method of resolution of the issues compared to individual litigation, separate litigation of the state law claims, or an FLSA action alone.").

Rule 23 class certification is particularly appropriate here because, due to Defendants' well-documented intimidation of dancers, and threats and retaliation against those who may wish to join the case, few dancers may be willing to step forward, for instance to opt into the case.

Rule 23's opt-out mechanism provides a solution to this problem, allowing dancers to take part in the case without risking being singled out by Defendants. See Scovil, 886 F. Supp. 2d at 56 (finding superiority requirement met despite low number of opt-ins and noting that "a class action has the advantage of allowing some drivers to proceed anonymously for a time as unidentified members of the class.").

## V.     CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court certify, pursuant to Fed. R. Civ. P. 23, a class of all individuals who worked as exotic dancers at Club Omaha at any time between May 26, 2017 and the present, who were misclassified as independent contractors and who were not paid minimum wage and overtime compensation.

DATED:       May 10, 2021               Respectfully submitted,

                                        ANDREA GROVE and
                                        CHRYSTINA WINCHELL,
                                        on behalf of themselves
                                        and all others similarly situated,

                                        By their attorneys,


                                        /s/ Olena Savytska
                                        Harold Lichten
                                        Olena Savytska
                                        LICHTEN & LISS-RIORDAN, P.C.
                                        729 Boylston Street, Suite 2000
                                        Boston, MA 02116
                                        (617) 994-5800
                                        hlichten@llrlaw.com
                                        osavytska@llrlaw.com

## <u>CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 7.1(d)(3)</u>

I hereby certify that this brief complies with the word limits set out in Rule 7.1(d)(1)(A). This brief, including the caption, headings, footnotes, and quotations, contains a total of 6,048 words.

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 10 day of May, 2021 a copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

/s/ Olena Savytska
Olena Savytska, Esq.