UNITED STATES DISTRICT COURT
DISTRICT OF NEBRASKA

ANDREA GROVE and )
CHRYSTINA WINCHELL, )
individually and on behalf )
of similarly situated individuals, ) NO. 8:20-CV-00193-JFB-MDN
)
       Plaintiffs, )
)
   v. )
)
MELTECH, INC., )
H&S CLUB OMAHA, INC., )
SHANE HARRINGTON, and )
BRAD CONTRERAS, )
)
       Defendants. )
)

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' RENEWED MOTION TO DISQUALIFY DEFENDANTS' COUNSEL AND FOR SANCTIONS**

    **I.    INTRODUCTION**

    Very reluctantly, Plaintiffs hereby renew their motion to disqualify Evan Spencer as counsel for Defendants and request sanctions against Mr. Spencer and his client, Shane Harrington. Plaintiffs have previously sought relief against Mr. Spencer's conduct, including through a motion for preliminary injunction, a motion for contempt, and requests for sanctions and disqualification. This Court has held several hearings to address Mr. Spencer's misconduct, and has warned Mr. Spencer, on more than one occasion, that his conduct is inappropriate, and that further misconduct will not be tolerated. Although Mr. Spencer has repeatedly assured this Court that he will behave reasonably moving forward, his recent conduct has been disturbing, entirely unacceptable, and disrespectful of both the Court's time and resources and the judicial process.

## II. FACTUAL AND PROCEDURAL BACKGROUND

**A. First Motion to Disqualify and Fee Award**

Plaintiffs originally filed a motion to disqualify Mr. Spencer in February 2021. This Motion followed Mr. Spencer's willful refusal to comply with this Court's order to produce a class list, (see, e.g., Dkt. 109), and was based in part on an email he sent to all members of Plaintiffs' Counsel's firms, most of whom were not counsel of record in this case, characterizing this case as "nothing more than a criminal shakedown" and threatening that "[w]hen you ask me years down the road to settle it will be I that is demanding money from you and everyone associated with this fraudulent case for my clients' hundreds of thousands of dollars in legal fees plus the damages you, your co-counsel and your clients have caused to Mr. Harrington and his business." See Dkt. 124.[1] The motion was also based on written documentation that Attorney Spencer was going to be taking over day-to-day operations of Club Omaha, following Mr. Harrington's retirement. See Dkt. 130, Most importantly the motion was based on Mr. Spencer and his clients`, incredibly inappropriate and scurrilous accusations that Mr. Spencer filed with this court that one opt-in – "going through an ugly divorce" and was "an alcoholic" with a history of "criminal conduct" and "a terrible mother." Dkts. 151, 152.02, 156. The Court reprimanded Mr. Spencer for filing these documents publicly, and imposed sanctions. Dkts. 175, 191**.**[2]

Although The Court denied Plaintiffs' request for disqualification without prejudice, it noted that "[t]he Court is troubled by the defendants' and counsel's conduct in this litigation thus

---

[1] Defendant Harrington shared this email on his public Facebook page, accessible to current and former Club Omaha dancers. See Dkt. 126.

[2] The Court has noted, in granting Plaintiffs' request for a preliminary injunction, that "plaintiffs [] allege that defendants' counsel Evan Spencer, encouraged and contributed to [his client's retaliatory] behavior. The record supports that contention." Dkt. 83, p. 3, n.1 (citations omitted).
.

far" and made an award of attorneys' fees to Plaintiffs' counsel in the amount of $4,865.00, noting that it is "familiar with the tortured history of this action [and] finds that an award is appropriate." [3] Dkts. 175, 191. That order and warning were dated April 15 and May 14, 2021, respectively.

### B. March 2021

On March 1, 2021, Mr. Spencer sent a 19-page diatribe, which he labelled as a Rule 11 "safe harbor notice" to Plaintiffs' Counsel. This letter was addressed to **all** the partners at each of Plaintiffs' Counsel's firms (even though most were not counsel of record in this case) in an apparent effort to intimidate Plaintiffs' Counsel. Savytska Decl ¶ 4. The letter characterizes this case as a "fraudulent conspiracy by five strippers with a variety of personal grievances, substance abuse problems, and psychological issues and no credibility." See Exhibit A (filed under seal). It states that "Plaintiffs and the opt-ins are jointly engaged in a conspiracy to commit litigation fraud thinly veiled as an FLSA class action." Id. The letter fails to identify any sanctionable conduct.

### C. Defendants' AAA Arbitration Demand and Counterclaims

As this Court is aware, Defendants filed cases in state court against Plaintiff Winchell and two of the opt-ins in this case in early 2020, alleging "breach of contract" and "defamation" claims related to their work as dancers at the club. See Dkts. 72.5, 72.6. This litigation has since been dismissed as inactive. Savytska Decl. ¶ 5. Shortly after this case was filed, in June 2020, Defendants filed an arbitration demand against Plaintiff Grove with the AAA. Savytska Decl. ¶ 6; Exhibit B. Importantly this Court then ruled that Defendants had waived their right to compel Plaintiffs to arbitration. See Dkt. 94. Yet Defendants have ignored this Court's order and

---

[3] The Court made the fee award on May 14, 2021. Defendants have not paid these fees to date.

amended their demand to add claims against all the Plaintiffs and opt-ins in this litigation – 11 people in total – in July 2020. Savytska Decl. ¶ 6, Exhibit C. The amended demand seeks $500,000 in damages against the Plaintiffs and opt-ins. Id. This arbitration demand has remained pending, even after this Court found that Defendants have waived their right to seek arbitration vis-à-vis the Plaintiffs and opt-ins. See Dkt. 94. Prior to the mediation, Plaintiffs indicated to Mr. Spencer and the AAA that the arbitration proceeding should be dismissed based on this Court's ruling and based on the lawsuits Defendants have previously filed against the dancers in state court. See Savytska Decl. ¶¶ 5, 7. However, the AAA proceeding remains pending; Defendants' second amended arbitration demand, filed this week, now seeks **one million dollars** in damages against Ms. Grove, Ms. Winchell, and five of the opt-ins. Savytska Decl. ¶ 7; Exhibit. D. Worse yet the arbitration clauses in Club Omaha's agreements bar joinder of claims of different individuals, but Mr. Spencer has filed the arbitration against all the Plaintiffs, and several opt ins in direct violation of his client's own arbitration clause.

Defendants had also previously asserted counterclaims, virtually identical to the claims made in their AAA demand, against the Plaintiffs and opt-ins. See Dkt. 110 (Answer and Counterclaims).[4] After a scheduling conference with Judge Nelson, and after Plaintiffs' Motion to Amend their Complaint was granted, Defendants filed an answer without counterclaims. Dkt. 181; Savytska Decl. ¶ 8. However, after the Parties' mediation session, Mr. Spencer indicated that he will now seek leave to amend the Defendants' answer to add counterclaims for unjust enrichment, even though such claims violate the anti-retaliation provisions of the FLSA.[5] Id. ¶ 8;

---

[4] Defendants' counterclaims included counts for breach of contract, perjury, attempted fraud, extortion, and blackmail, fraudulent misrepresentation, tortious interference, invasion of privacy, negligence, and conspiracy.

[5] As courts have repeatedly recognized, counterclaims are generally preempted by the FLSA. See Hose v. Henry Industries, Inc., 2017 WL 386545, at *4 (E.D. Mo. Jan. 27, 2017)

Exhibit E.

### D. Events Leading up to the Mediation

During the May 25, 2021 hearing with Judge Nelson, intended to discuss the logistics of the court-sponsored mediation, Mr. Spencer indicated that "we have spoken with the opt-ins, and that these individuals would be opting out of the case – a blatant violation of the Court's preliminary injunction. Savytska Decl. ¶ 9.[6] On June 3, 2021, just a few weeks before the mediation, Mr. Spencer sent an email to Plaintiffs' Counsel titled "20-day Defamation Notice pursuant to NRS 25-840.01". See Exhibit H (filed under seal). This email states that "[y]our clients have committed and continue to commit defamation in violation of their contracts and Nebraska law to defame my clients and to garner support and opt-ins for their case." Id. The email does not identify any specific dates and the manner in which the alleged defamatory statements were made, as required by NRS 25-840.01,[7] but it demands retraction of "all these

---

("counterclaims brought by employers seeking indemnity from their employees for liabilities under the FLSA are generally preempted by the FLSA and its broad remedial scheme."); LeCompte v. Chrysler Credit Corp., 780 F.2d 1260, 1264 (5th Cir. 1986); see also Martin v. Gingerbread House, Inc., 977 F.2d 1405, 1406–08 (10th Cir. 1992) ("[A] third party complaint by an employer seeking indemnity from an employee [for its own violation of the FLSA] is preempted."); Lyle v. Food Lion, Inc., 954 F.2d 984, 987 (4th Cir. 1992); Gustafson v. Bell Atlantic Corp., 171 F. Supp. 2d 311, 327–28 (S.D.N.Y. 2011) ("Allowing indemnification [from an employee by an employer under the FLSA] would permit employers to contract away their obligations under the FLSA, a result that flouts the purpose of the statute."). Defendants' claims in this case, based on nothing more than the Plaintiffs' exercise of their rights under the FLSA, are likewise preempted.

[6] Magistrate Nelson can confirm this colloquy.

[7] NRS 25-840.01 provides that "[i]n an action for damages for the publication of a libel . . . [w]ithin twenty days after knowledge of the publication, plaintiff shall have given each defendant a notice by certified or registered mail specifying the statements claimed to be libelous or to have invaded privacy as provided by section 20-204 and specifically requesting correction." Here, Defendants do not specify where, when (or whether) the allegedly defamatory statements were made in writing. If the statements were made more than 20 days ago and Defendants knew about them, their demands are untimely. Finally, Defendants made their demand by email, rather than by mail.

defamatory allegations in writing within 20 days by your clients. Alternatively, all statutorily permissible claims will be added to Claimants' Second Amended Complaint to be filed with AAA on behalf of Club Omaha, Mr. Harrington and Mr. Contreras." Id.

As of the time of writing, Mr. Spencer has submitted a second amended arbitration demand to the AAA, seeking a million dollars in damages, and making claims such as defamation and invasion of privacy against Plaintiffs and five of the opt-ins and attaches as exhibits apparently unflattering comments some of the opt-ins have made about the Defendants, on social media. See Exhibit D. Mr. Spencer continues to pursue this arbitration proceeding (originally filed a year ago) even though this Court has held that Defendants waived their right to seek arbitration with regard to the Plaintiffs and opt-ins in this case, and even though this demand clearly constitutes claim splitting.

### E. Mediation and its Aftermath

During and after the Parties' court-sponsored mediation this week, Mr. Spencer's conduct has been entirely unbecoming of a member of the legal profession. After the first day of mediation, Mr. Spencer failed to respond to the mediator's proposal as instructed by the Court, and instead yet another lengthy email with various threats and accusations to Plaintiffs' Counsel at 5 AM on June 23. See Savytska Decl. ¶ 11; Exhibit F (filed under seal). This email states that "Plaintiffs, the opt-ins and their attorneys potentially have a lot to lose", that "your case is going to put [Plaintiffs and opt-ins] in a terrible predicament" and that "Defendants will be declared the prevailing parties in federal court, state court, and AAA." Id.

That same afternoon, Mr. Spencer failed to appear for the second day of the parties' mediation session with the Magistrate Judge and did not respond to the Court's multiple attempts to reach him. Savytska Decl. ¶ 12.

On the early morning of June 24, Mr. Spencer again sent an email to various members of Plaintiffs' Counsel's firms, many of whom are not counsel of record in this case. Savytska Decl. ¶ 13 This notice details confidential mediation discussions, and states that "[i]n the event you proceed with either class action, you will be liable for Defendants' attorney's fees (already in excess of $250,000) when Defendants are declared the prevailing parties." See Exhibit G (filed under seal). Mr. Spencer also states that "all Plaintiffs' attorneys have been advised of [] lies [by the Plaintiffs and opt-ins] and they are willfully proceeding with fraudulent litigation based upon these lies." Id. Finally, Mr. Spencer sent a separate email to Plaintiffs' Counsel in which he indicated that Defendants intend to add counterclaims for unjust enrichment (even though Defendants had previously agreed not to pursue counterclaims against Plaintiffs). See Exhibit E.

### III. ARGUMENT

**A. Defendants' Counsel has Failed to Heed Repeated Warnings about His Conduct**

Attorney Spencer has received multiple warnings from this Court about his conduct, and has been on notice for several months that further misconduct may subject him to disqualification. In May 2021, the court found that sanctions were appropriate against Mr. Spencer and his client, explaining that "plaintiffs achieved a degree of success that is significant in view of the defendants' conduct in this action" and "defendants had adequate notice that the plaintiffs were seeking sanctions, up to and including disqualification, contempt, and an entry of judgment." Dkt. 191. Although this Court did not disqualify Mr. Spencer, its decision was explicitly based on the fact that "[a]t a telephonic conference before Magistrate Judge Nelson on March 22, 2021, defense counsel professed willingness to cooperate with the Court and with plaintiffs' counsel." Dkt. 175. The Court also said that "Defendants' counsel is [] advised that future instances of failure to comply with the Court's orders or of contumacious conduct may

result in sanctions, up to and including entry of judgment against the defendants." Id. The Court's warning could not be more clear, and Mr. Spencer has been on notice that any further misconduct could subject him to disqualification and/or judgment being entered against the Defendants.

Sadly, instead of heeding these warnings, Mr. Spencer's conduct over the past few months, and particularly in the last two weeks, has only gotten worse, and he has demonstrated a troubling pattern, when met with disagreement by Plaintiffs, Plaintiffs' Counsel or even the Court, of lashing out with threats, escalation, and intimidation. This includes attempting to use this Court or the AAA Arbitration proceedings as bludgeons in his arsenal, and repeatedly threatening dismissal and/or counterclaims.

Mr. Spencer has been deeply disrespectful of the time and resources of this Court, Plaintiffs and their Counsel, and failed to participate in the mediation in good faith. After the first day of mediation, facilitated by Judge Nelson, Mr. Spencer was specifically instructed to respond to a mediator's proposal. He did not do this. Instead, he sent a long email to Plaintiffs' Counsel, accusing Plaintiffs and opt-ins "fil[ing] perjured declarations," arguing that they were "unjustly enriched by $320,000" and insisting that they "will not see a nickel more" unless they immediately accept Defendants' settlement offer, significantly lower than the mediator's proposal. Exhibit F. This email states that "Plaintiffs, the opt-ins and their attorneys potentially have a lot to lose" and that "Defendants will be declared the prevailing parties in federal court, state court, and AAA." Id.

The mediation session was scheduled to resume at noon on June 23; while Plaintiffs' Counsel appeared for the second mediation session, Mr. Spencer was absent, and did not respond to the Court's efforts to reach him by phone and email. In the early morning hours of June 24,

Mr. Spencer sent yet a second "safe harbor notice" email, several pages long, to multiple members of Plaintiffs' Counsel's law firms. The email discusses in detail confidential offers and statements made during the mediation and states, among other things, that "by committing fraud upon the court and upon Defendants, [Plaintiffs] have lost their right to recover any monetary damages under the FLSA or any other law" and asks Plaintiffs' Counsel to "to act in good faith and dismiss your case with prejudice before any further acts of litigation fraud are committed by your clients." Exhibit G. Mr. Spencer also made clear, in a separate email, that Defendants intend to pursue counterclaims for unjust enrichment against Plaintiffs. Mr. Spencer has failed to follow the Court's instructions and meaningfully participate in the mediation process, and has reverted to his tactics of threats and intimidation.

### B. Mr. Spencer has Persisted in Intimidating, Retaliatory Conduct

Aside from Mr. Spencer's conduct during the mediation process, his behavior generally has been deeply troubling. A few examples:

First, during a court conference to finalize logistics for the mediation, Mr. Spencer indicated that "we have spoken with the dancers" and that several of them would be opting out. If Mr. Spencer has personally spoken with the opt-ins, this is an improper ex-parte communication. Even if he has not spoken with the dancers personally, Defendants' apparent efforts to reduce the number of opt-ins are a clear violation of the preliminary injunction entered by the Court. See Dkt. 84 ("IT IS ORDERED that defendants Meltech, Inc.; H&S Club Omaha, Inc., and Shane Harrington, and their officers, agents, servants, employees, and attorneys, are prohibited from retaliating or discriminating in any way against the plaintiffs or similarly

situated individuals for involvement with or participation in this action or any other pursuit of claims under the FLSA.").

Second, as detailed above, Mr. Spencer has now sent two separate "safe harbor notices" to multiple members of Plaintiffs' Counsel's firms, including those not involved in the case – an apparent tactic to threaten and embarrass Plaintiffs' Counsel. Spencer's first safe harbor letter describes this case as a "fraudulent conspiracy"; his second letter threatens that Plaintiffs "will be liable for Defendants' attorney's fees (already in excess of $250,000) when Defendants are declared the prevailing parties." Exhibits A, G. Both letters urge Plaintiffs' Counsel to immediately dismiss the case. Mr. Spencer has also sent an entirely frivolous "defamation notice" to Plaintiffs' Counsel, which fails to detail any specific instances of defamation and otherwise fails to comply with any of the requirements of the anti-defamation statute. Exhibit H.

Mr. Spencer also continues to pursue, on behalf of the Defendants, an arbitration demand with the AAA, which seeks **$1,000,000** in damages against Plaintiffs and several of the opt-ins. See Exhibit D. Mr. Spencer continues to pursue this arbitration proceeding (originally filed a year ago) even though this Court has held that Defendants waived their right to seek arbitration with regard to the Plaintiffs and opt-ins in this case (Dkt. 94), and even though this demand clearly constitutes claim splitting, since Defendants have filed state court lawsuits against Ms. Winchell and two of the opt-ins making identical allegations, and have previously asserted identical counterclaims in this proceeding (Dkt. 110).[8] Moreover, this Court has already ruled

---

[8] It is well established that claim-splitting is discouraged. All claims must be brought together, and cannot be parsed out to be heard by different courts." Sparkman Learning Ctr. v. Arkansas Dept. of Human Services, 775 F.3d 993, 1000 (8th Cir. 2014) (citing Elgin v. Dep't of Treasury, ⸺ U.S. ⸺, 132 S.Ct. 2126, 2147, 183 L.Ed.2d 1 (2012) ("Plaintiffs generally must bring all claims arising out of a common set of facts in a single lawsuit, and federal district courts have discretion to enforce that requirement as necessary to avoid duplicative litigation."). See, e.g., MacIntyre v. Lender Processing Services, Inc., 2012 WL 4872678, at *2 (D. Minn.

that Defendants have waived their right to seek arbitration vis-à-vis the Plaintiffs and opt-ins (see Dkt. 94). The AAA demand, which seeks $1,000,000 in damages, is thinly-veiled retaliation against the Plaintiffs and opt-ins, and has no legal basis.

### C. Mr. Spencer Should be Disqualified Immediately

As noted in Plaintiffs' first Motion to Disqualify, "[a]ttorney disqualification is committed to the discretion of the court." Shukh v. Seagate Tech., LLC, 2010 WL 5018189, at *5 (D. Minn. Dec. 2, 2010) (quoting Jenkins v. State of Missouri, 931 F.2d 470, 484 (8th Cir.1991)). "This discretion is especially broad in class action cases." Arnold v. Cargill Inc., 2004 WL 2203410, at *5 (D. Minn. Sept. 24, 2004) (citing Jenkins, 931 F.2d at 484).[9] While motions for disqualifications are subject to strict scrutiny, "any legitimate doubts ... must be resolved in favor of disqualification." Olson v. Snap Prods., Inc., 183 F.R.D. 539, 542 (D. Minn. 1998) (citing Coffelt v. Shell, 577 F.2d 30, 32 (8th Cir.1978)).

"Factors to be considered [in deciding a motion for disqualification] include a court's 'duty to maintain public confidence in the legal profession and its duty to insure the integrity of the judicial proceedings.'" Gifford v. Target Corp., 723 F. Supp. 2d 1110, 1116 (D. Minn. 2010)

---

Oct. 15, 2012) ("MacIntyre's decision to bring her claims in two separate lawsuits constitutes improper claim-splitting . . .There can be no doubt that, had MacIntyre's first lawsuit been litigated to judgment, she would be precluded from thereafter bringing her discrimination claims[.]").

[9] "Under federal law . . . a motion to disqualify is the proper method by which to call to the Court's attention any alleged conflict or breach of an attorney's ethical duties." F.D.I.C. v. Cheng, 1992 WL 420877, at *5 (N.D. Tex. Dec. 2, 1992) (citing In re American Airlines, Inc., 972 F.2d 605, 610 (5th Cir.1992); Musicus v. Westinghouses Elec. Corp., 6211 F.2d 742, 744 (5th Cir.1980)). In fact, the Court is "*obliged* to take measures" against such conduct. American Airlines, 972 F.2d at 611 (quoting Woods v. Covington County Bank, 537 F.2d 804, 810 (5th Cir.1976)).

(quoting In re Potash Antitrust Litig., 1993 WL 543013, at *16 (D. Minn. Dec. 8, 1993)). Specifically, courts have the discretion to "disqualify counsel who behaves unethically." Beck v. Vandergriff, 2020 WL 6287328, at *8 (E.D. Mo. Oct. 27, 2020). "Disqualification is appropriate where an attorney's conduct threatens to work a continuing taint on the litigation and trial." Arnold v. Cargill Inc., 2004 WL 2203410, at *5 (citing In re Potash, 1993 WL 5403013 at *16); see also Gifford, 723 F. Supp. 2d at, 1118–19. (disqualification appropriate where attorney's conduct "taints the[] proceedings and, if left unremedied, potentially undermines public confidence in the legal profession." ).

Courts have found disqualification to be an appropriate remedy in cases where counsel have behaved inappropriately and have disregarded repeated court warnings about their conduct. See Lelsz v. Kavanagh, 137 F.R.D. 646, 655 (N.D. Tex. 1991) (disqualifying attorney from further participation in class action case due to a "pattern of combative and improper conduct even after repeated and strident warnings [that] has prejudiced the rights of her adversaries and impaired the administration of justice in this case."); LabMD, Inc. v. Tiversa Holding Corp., 2020 WL 1428935, at *11 (W.D. Pa. Mar. 24, 2020) ("Upon review, the Court finds that revocation of Attorney Hawkins' *pro hac vice* admission is appropriate. Attorney Hawkins' repeated disregard of this Court's Orders and clear warnings must not, and will not, be tolerated . . . Because warnings and lesser sanctions by this Court have not served to deter Attorney Hawkins' misconduct, the Court reluctantly concludes that this serious sanction is required."); Peer v. Lewis, 2007 WL 2081718, at *3 (S.D. Fla. July 20, 2007) ("The Court recognizes that disqualification of counsel is a serious sanction that can be undertaken only as a last possible resort and only upon clear and convincing evidence of counsel's bad faith or reckless disregard . .

. counsel's repeated failures require his disqualification, as every other tool that the Court has utilized in this case has, to date, failed.").

In this case, the Court has given Defendants' Counsel a clear warning: future instances of failure to comply with the Court's orders or of contumacious conduct may result in sanctions, up to and including entry of judgment against the defendants." Dkt. 175. The Court has also already imposed "lesser sanctions" – an award of attorneys' fees. Dkt. 191. Indeed, the Court's decision of a few months ago declining to disqualify Defendants' Counsel was expressly premised on defense counsel['s] professed willingness to cooperate with the Court and with plaintiffs' counsel." Dkt. 175. Yet over the past few weeks, Mr. Spencer has behaved with reckless disrespect of his obligations to the Court, has defied the Court's orders, and has been disrespectful of Judge Nelson, the Plaintiffs, and their counsel. After repeated admonitions form the Court, including a preliminary injunction, a contempt hearing, and instructions to obtain competent local counsel, Mr. Spencer continues in his pattern of outrageous conduct.[10] It is impossible for Plaintiffs and the Court to see this case through class certification, discovery, dispositive motions and trial with Mr. Spencer representing Defendants.

### D.  Monetary Sanctions against Mr. Spencer and Mr. Harrington are Warranted

This Court is familiar with the uphill battle waged by Plaintiffs' Counsel in this case. Counsel have spent well over a hundred hours responding to Mr. Spencer's lengthy and frivolous filings and emails and seeking recourse from the Court in light of Mr. Spencer's and his client's ongoing misconduct. Plaintiffs seek monetary sanctions to compensate them for the time spent

---

[10] Notably, Mr. Penn was available only by phone for the mediation session; it appears that, despite the Court's clear instructions, neither Mr. Harrington nor Mr. Contreras participated in the mediation.

briefing the instant motion as well as the time spent preparing for and participating in the mediation process. The Court has inherent authority to impose sanctions. See Chambers v. NASCO, Inc., 501 U.S. 32, 44–45 (1991) ("A primary aspect of [the court's] discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process."); VanDanacker v. Main Motor Sales Co., 109 F. Supp. 2d 1045, 1046 (D. Minn. 2000). Sanctions are appropriate in this case because Mr. Spencer's "conduct viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court.'" Natl. Loan Inv'rs, L.P. v. W. Sugar Co., 366 F. Supp. 2d 881, 882, 884 (D. Neb. 2005) (quoting Perkins v. Spivey, 911 F.2d 22, 36 (8th Cir. 1990)).

Mr. Spencer did not participate in the court-sponsored mediation process in good faith. Throughout the process, he sent emails with unfounded accusations and threats to Plaintiffs' Counsel, in a transparent effort to drive down the value of a potential settlement. He disregarded the Court's instructions to make a demand before the mediation and to send a response to the neutral's proposal after the first day. He did not ensure that his client was available to participate as instructed by the Court. He failed entirely to appear for the second day of mediation. He sent a lengthy email to multiple attorneys not involved with this case, discussing confidential matters addressed at the mediation, and urging Plaintiffs' Counsel to dismiss the case, characterizing it as fraudulent. In other words, Mr. Spencer has wasted the valuable time of the Court and the Parties, and has shown his continued insistence on threatening and insulting Plaintiffs and their counsel. Sanctions are warranted to punish Mr. Spencer and his client for this conduct.

## IV. CONCLUSION

For the foregoing reasons, the Court should disqualify Defendants' Counsel Evan Spencer from this case, and should impose monetary sanctions against Mr. Spencer and his client based on their conduct in this litigation.

DATED: June 28, 2021

Respectfully submitted,

ANDREA GROVE, and
CHRYSTINA WINCHELL,
on behalf of themselves
and all others similarly situated,

By their attorneys,

/s/ Olena Savytska
Harold Lichten
Olena Savytska
LICHTEN & LISS-RIORDAN, P.C.
729 Boylston Street, Suite 2000
Boston, MA 02116
(617) 994-5800
hlichten@llrlaw.com
osavytska@llrlaw.com

## CERTIFICATE OF COMPLIANCE PURSUANT TO RULE 7.1(d)(3)

I hereby certify that this brief complies with the word limits set out in Rule 7.1(d)(1)(A). This brief, including the caption, headings, footnotes, and quotations, contains a total of 4411 words.

**CERTIFICATE OF SERVICE**

      I hereby certify that on this 28 day of June, 2021, a copy of the foregoing document was filed electronically through the Court's CM/ECF system, which will send notice of this filing to all counsel of record.

      /s/ Olena Savytska
      Olena Savytska, Esq.